997 A.2d 194

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. KARLTON L. BLACKMON, DEFENDANT–RESPONDENT.

Argued February 1, 2010—Decided June 9, 2010.

Long, J., concurred in result and filed opinion in which Rabner, C.J., joined.

Albin and Wallace, JJ., dissented and filed opinion.

286

Monica de Outeiro, Assistant Prosecutor, argued the cause for appellant (Luis A. Valentin, Monmouth County Prosecutor, attorney; Patricia B. Quelch, Assistant Prosecutor, of counsel and on the brief).

Mark H. Friedman, Assistant Deputy Public Defender, argued the cause for respondent (Yvonne Smith Segars, Public Defender, attorney).

Robyn B. Mitchell, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Paula T. Dow, Acting Attorney General, attorney).

Justice HOENS delivered the opinion of the Court.

We granted the petition for certification filed on behalf of the State of New Jersey to consider whether the Appellate Division erred in ordering that defendant Karlton Blackmon be afforded a new sentencing hearing. More specifically, we granted the petition to address whether the appellate panel, in directing that defendant's step-father be permitted to be heard, and in reasoning that the sentencing court abused its discretion by precluding him from speaking, had, in effect, created a right to be heard that exceeded its authority.

I.

Defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3, second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), and second-degree possession of a firearm by a convicted felon, N.J.S.A. 2C:39-7(b). He entered

into a written plea agreement, pursuant to which he would plead guilty to a down-graded charge of first-degree aggravated manslaughter, *N.J.S.A.* 2C:11–4(a), and second-degree possession of a firearm by a convicted felon.

In exchange for defendant's guilty plea, the State agreed to dismiss the counts charging him with first-degree murder and second-degree possession of a weapon for an unlawful purpose. The State also agreed to recommend a sentence of twenty years in prison, subject to the parole ineligibility and supervision provisions of the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, for the first-degree aggravated manslaughter count, with a concurrent ten-year sentence for the second-degree offense. As part of the plea agreement, defendant reserved the right to ask the court to impose a lesser sentence than the one to which he had agreed.

On November 7, 2005, defendant entered his guilty plea. As part of the plea colloquy, defendant described the events that led to his indictment. He admitted that he had been in Asbury Park with a number of people, and that he and the victim, Earl Bailey, had a fist fight, during which defendant punched Bailey, knocking him to the ground. Defendant further admitted that he shot Bailey from about ten feet away while Bailey was still on the ground. Although defendant asserted that he had been aiming for Bailey's leg, the shot hit Bailey in the chest, fatally wounding him. The trial court accepted the plea and the matter was scheduled for sentencing.

Prior to his sentencing date, defendant filed a motion to withdraw his guilty plea. He asserted that his plea was not voluntary, but was instead the result of pressure exerted on him by his family. He contended that his mother, his aunts, his cousins, and his brother had urged him to accept the plea in order to avoid the risk of the life sentence that he would face if he were tried and convicted of murder. He certified that the stress and confusion caused by this pressure from his family resulted in a plea that was not voluntary. He further claimed that if tried, he would argue

that the shooting was justified by self defense or the defense of others.

After hearing oral arguments from defendant's counsel and from the State, the trial court denied the plea withdrawal motion, concluding that defendant's plea was both knowing and voluntary. The court pointed out that the plea negotiations had been lengthy and that during the plea proceeding itself there had been no hint that defendant's plea was anything other than voluntary. Turning specifically to defendant's claim that his family had unduly pressured him, the court observed:

> I don't find, not for a minute, that Mr. Blackmon was inappropriately pressured by his family. There is no doubt in my mind that his family was concerned about his welfare and about the best possible deal he could get under the circumstances. He faced a first-degree murder charge, which carries with it . . . up to life in prison with no parole for at least 30 years. That was on the table. That was something that was talked about, negotiated. . . .

> At the time I took the plea from [defendant], I determined that he was credible in his explanation to me of what happened. I found that he was credible in his statements that he was entering this plea voluntarily. Of course he was stressed. Of course he felt pressured by his family. He was facing life imprisonment. He had been in jail for some time. He had run from this area and had been found in Florida and placed in custody. And of course he was under some stress. I would be very surprised if somebody who was charged with these criminal activities, facing this kind of time in prison would not be stressed. I find there is nothing specifically unusual about his being stressed.

> I find that this defendant has failed to provide this Court with anything that would support his motion to withdraw the plea. I have made a determination that the plea was entered knowingly, voluntarily and willingly. I will deny the motion.

After denying defendant's motion to withdraw his guilty plea, the following colloquy took place:

> THE COURT: So now we're here on the sentencing of Karlton Blackmon.

> THE PROSECUTOR: Thank you, Your Honor. I would move for the imposition of sentence at this time in accordance of the terms of the November 7, 2005 plea agreement. I would like the record to reflect that Mrs. Bailey is present. She would be the victim's mother. Also present is Patrice Bailey, the victim's sister. Paulette Small is present. She would be the victim's girlfriend and the mother of his [three] children. And a cousin Rick as well is present. And I would ask that Ms. Small have the opportunity to address the Court at the appropriate time.

> THE COURT: Thank you. My procedure is that the Prosecutor introduces the case, the defense counsel speaks. I will ask Mr. Blackmon if he wants to speak.

Then I'll give the person who is here on behalf of the family [the opportunity] to speak and then I'll finally let the Prosecutor speak, if he wants to.

DEFENSE COUNSEL: Thank you, Judge. I would also add that my client's family is here and his [step-]father is there and also has asked to speak on his behalf.

THE COURT: I won't allow that. You can speak on his behalf.

DEFENSE COUNSEL: Thank you.

THE COURT: And he can speak on his own behalf.

DEFENSE COUNSEL: I so advised his family.

Following that discussion, defense counsel argued on defendant's behalf and defendant made his statement to the court. The trial court then heard from Paulette Small, who was the mother of Bailey's three minor children and the woman with whom he was living when he died. Finally, the prosecutor spoke.

The trial court then proceeded with sentencing, finding that aggravating factors three, *N.J.S.A.* 2C:44–1(a)(3) (risk that defendant will commit another offense), six, *N.J.S.A.* 2c:44–1(a)(6) (extent and seriousness of prior record), and nine, *N.J.S.A.* 2C:44–1(a)(9) (need for deterrence), all applied. In addition, the court considered the three mitigating factors raised by defense counsel. In the court's analysis, because the shooting was part of a mutual fight between defendant and Bailey, there were sufficient grounds to warrant the application of mitigating factor four, *N.J.S.A.* 2C:44–1(b)(4) (substantial grounds tending to excuse or justify conduct but insufficient to establish defense). The court, however, rejected both mitigating factors three, *N.J.S.A.* 2C:44–1(b)(3) (defendant acted under strong provocation), and five, *N.J.S.A.* 2C:44–1(b)(5) (victim's conduct induced or facilitated the crime), finding that nothing in the record supported the application of either.

The court then weighed all of the applicable factors, finding that the aggravating factors preponderated over the sole mitigating factor. Following that analysis, the court concluded that the sentence recommended in the plea agreement was appropriate under all of the circumstances. As a result, the court imposed a sentence of twenty years on the first-degree count, with an eighty-five percent period of parole ineligibility and the five-year parole

period mandated by NERA. On the second-degree count, the court imposed a concurrent sentence of ten years, with a five-year period of parole ineligibility pursuant to the Graves Act, *N.J.S.A.* 2C:43–6(c), along with applicable fees and penalties.

After imposing that sentence, the court addressed the people in attendance saying: "To the family of both sides [defendant and victim], I appreciate your being here. Sometimes nobody shows up. And we get an idea that somebody cares on [the defendant's] side and somebody cares [on] the victim's side."

## II.

Defendant filed an appeal, and because he only challenged his sentence, it was heard on May 29, 2008, as part of the Excessive Sentence Oral Argument (ESOA) calendar before a panel of two Appellate Division judges. *See R.* 2:9–11 (establishing ESOA calendar and procedure). During the oral argument, defendant specifically waived any appellate issue relating to the sentencing court's denial of his motion to withdraw his guilty plea. Instead, defendant argued only that the hearing was "less than fair." His presentation consisted of three points. First, he argued that it was an abuse of the sentencing court's discretion to permit the victim's "girlfriend" to speak while refusing to hear from defendant's step-father. Second, he asserted that the sentencing court erred in rejecting the argument that mitigating factor five applied. Finally, he objected to the sentence as excessive, characterizing the twenty-year term as the imposition of "the maximum."

In response, the Prosecutor explained that Ms. Small was not simply the victim's "girlfriend," but was the mother of his three small children. Because the children had a statutory right to be heard at the sentencing proceeding but were too young to participate, the Prosecutor contended that it was entirely appropriate for their mother to speak on their behalf. Responding to the panel's question about why defendant's step-father was not also allowed to speak, the Prosecutor conceded that the court had not given a reason, but surmised that it was because, unlike Ms. Small, no

member of defendant's family had a right to be heard. Turning to
the other two arguments raised on defendant's behalf, the Prose-
cutor asserted that the sentencing court properly considered and
rejected mitigating factor five, and pointed out that defendant was
not in fact sentenced to the maximum term for his crime, which
would have been thirty years, *N.J.S.A.* 2C:11-4(c), but only to the
maximum sentence to which defendant had agreed in his plea.

The following day, the Appellate Division issued its order, which
bore a filing date of June 5, 2008, and which directed as follows:

> The matter is remanded to the trial court for resentencing. If, at that resentenc-
> ing, defendant's [step-]father wishes to speak on defendant's behalf, he should be
> permitted to do so.

This Court granted the State's petition for certification, 196 *N.J.*
588, 960 *A.*2d 386 (2008), and "summarily remanded [this matter]
to the Appellate Division for a statement of reasons in respect to
its order of June 5, 2008[.]" *Ibid.* The order also provided that
"the Appellate Division may, in its discretion, refer the matter for
formal briefing and reargument of the parties prior to the court's
entry of a disposition pursuant to this Order." *Ibid.*

The appellate panel did not transfer the case to a plenary
calendar for briefing and argument, instead electing to review and
consider the arguments that the State had raised in its petition for
certification. The panel then issued its order dated March 19,
2009, in which it explained the reasoning behind its earlier deci-
sion to remand. After commenting that it had "no quarrel with
the quantum of the sentence ultimately imposed by the trial
court," the panel instead found fault "with the procedures [the
sentencing court] employed in imposing that sentence." That is,
the panel reasoned that the consideration and weighing of the
aggravating and mitigating factors was appropriate and observed
that it would be "immaterial if, upon re-sentencing, the trial court
imposes the same sentence upon defendant." However, the panel
required the sentencing court to afford defendant's family member
the "opportunity to speak on defendant's behalf if he wishes to do
so" before imposing sentence.

The panel reasoned that, apart from those individuals with a statutory right to speak, *see N.J.S.A.* 52:4B–36(n) (Crime Victim's Bill of Rights), the court has the discretion to decide who will be permitted to speak at a sentencing proceeding. Expressing its concern that the sentencing court should exercise that discretion so that it both is fair to defendant and demonstrates fairness to a defendant's family and close friends who have come to witness it, the panel found the latter to be "deficient." The appellate panel pointed out that because the sentencing court had given no reason for refusing to permit defendant's step-father to speak, its decision could be characterized as arbitrary.

As part of its explanatory order, the panel considered each of the arguments raised by the State. Remarking that certain of the precedents cited by the State were distinguishable because they were capital prosecutions in which family members sought to participate during the penalty phase, *see State v. DiFrisco,* 137 *N.J.* 434, 645 *A.2d* 734 (1994); *State v. Moore,* 122 *N.J.* 420, 585 *A.2d* 864 (1991), the panel nonetheless utilized some of the language in those cases to support its order. Relying upon a phrase found in *Moore, supra,* 122 *N.J.* at 480, 585 *A.2d* 864, the panel explained that "it was a uniquely natural and human reaction that defendant's step-father wished to say a few words on defendant's behalf before the trial court imposed sentence.... [W]e did no more than direct the trial court to recognize that human reaction before it imposed sentence on defendant."

The State again filed a petition for certification, which this Court granted. 200 *N.J.* 370, 982 *A.2d* 457 (2009). We thereafter granted leave to the Attorney General to appear as an amicus curiae.

## III.

The State urges this Court to reverse, arguing that the Appellate Division erred in remanding a sentence as to which it concedes there was no error. Moreover, the State argues that there was neither an abuse of discretion, nor any procedural unfairness

attendant upon the imposition of sentence because unlike defendants and crime victims, others, including defendant's family members, have no right to be heard. Finally, the State argues that the Appellate Division's order, by directing that defendant's step-father be permitted to speak, erred by creating a right to be heard where neither the Legislature nor this Court has done so.

Defendant offers three reasons in support of his argument that the Appellate Division's order should be affirmed. First, he asserts that the appellate panel did not create a new right of allocution but instead recognized that it is appropriate to permit family members to present mitigating evidence to the sentencing court. He suggests that defendant's step-father might have been able to present information relevant to mitigating factor eleven, *N.J.S.A.* 2C:44–1(b)(11) (incarceration would entail excessive hardship on defendant or his dependents), and he urges us to find support for the Appellate Division's directive in capital penalty jurisprudence. *See Lockett v. Ohio,* 438 *U.S.* 586, 604, 98 *S.Ct.* 2954, 2965, 57 *L.Ed.*2d 973, 990 (1978) (permitting family members to offer "as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death" (emphasis omitted)); *State v. Bey (II),* 112 *N.J.* 123, 156–57, 548 *A.*2d 887 (1988) (explaining that defendants are given "wide leeway" to present evidence in mitigation of death penalty).

Second, defendant argues that the sentencing court was obligated to set forth its reason for prohibiting defendant's step-father from speaking, and that the failure to do so was both arbitrary and contrary to the statutory provisions that are designed to facilitate appellate review. *See N.J.S.A.* 2C:44–7 (describing scope of appellate review of sentencing court's actions; referring to review of factual findings relating to aggravating and mitigating factors). Finally, defendant contends that the sentencing court's procedure was also unfair to the victim's family because the court used words that indicated it would hear from only one person on behalf of the victim.

The Attorney General, appearing as an amicus curiae, echoes the arguments advanced by the State. In particular, the Attorney General asserts that the panel's order would effectively place the defendant's family and, by analogy, his or her friends, on an equal footing with a victim of that defendant's crime by extending to them the rights that are guaranteed only to victims. The Attorney General argues that the panel's order not only creates an entirely new right, but that it also upsets the careful balance already struck by our Constitution, statutes and Court Rules. Finally, the Attorney General asserts that because the sentencing court was not obligated to allow defendant's family member to speak, its failure to explain its reasons for refusing that request cannot be an abuse of discretion.

## IV.

The central question in this appeal must be viewed in the larger context of the ordinary rules that govern sentencing decisions and their review by appellate courts. As we have previously explained, the "[p]ronouncement of judgment of sentence is among the most solemn and serious responsibilities of a trial court. No word formula will ever eliminate this requirement that justice be done." *State v. Roth*, 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984). As we have commented, "[t]he dominant, if not paramount, goal of the [New Jersey] Code [of Criminal Justice] is uniformity in sentencing." *State v. Kromphold*, 162 *N.J.* 345, 352, 744 *A.*2d 640 (2000). Most recently, we have explained that the goal of uniformity is "achieved through the careful application of statutory aggravating and mitigating factors." *State v. Cassady*, 198 *N.J.* 165, 179–80, 966 *A.*2d 473 (2009); *see, e.g., N.J.S.A.* 2C:44–1(a) (listing aggravating factors that must be considered); *N.J.S.A.* 2C:44–1(b) (listing mitigating factors that sentencing court may consider).

In exercising its authority to impose sentence, the trial court must identify and weigh all of the relevant aggravating factors that bear upon the appropriate sentence as well as those mitigating factors that are "fully supported by the evidence."

State v. Dalziel, 182 N.J. 494, 504–05, 867 A.2d 1167 (2005). Although there is more discretion involved in identifying mitigating factors than in addressing aggravating factors, those mitigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered and either embraced or rejected on the record. *Ibid.; see State v. Bieniek*, 200 N.J. 601, 609, 985 A.2d 1251 (2010) (encouraging judicial practice of explicitly addressing each mitigating factor raised by defendant).

 Appellate review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard. *See State v. Jarbath*, 114 N.J. 394, 401, 555 A.2d 559 (1989). In conducting the review of any sentence, appellate courts always consider whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether "the factfinder [has] appl[ied] correct legal principles in exercising its discretion." *Roth, supra*, 95 N.J. at 363, 471 A.2d 370. Our traditional articulation of this standard uses language that limits a reviewing court's exercise of authority to those situations in which the application of the facts to the law has resulted in a clear error of judgment or a sentence that "shocks the judicial conscience." *Id.* at 363–65, 471 A.2d 370; *see State v. O'Donnell*, 117 N.J. 210, 215–16, 564 A.2d 1202 (1989) (outlining principles of appellate review of sentencing decisions). Appellate courts are not permitted to substitute their judgment about a sentence they would have selected for the one imposed by the sentencing court, and we have commented that our trial judges "need fear no second-guessing" when they exercise their discretion in accordance with the statutory mandates and the principles we have established. *Roth, supra*, 95 N.J. at 365, 471 A.2d 370.

 In addition to the statutory scheme governing the sentencing court's weighing of aggravating and mitigating factors, there are requirements that bear on the sentencing proceeding itself. As part of the hearing, a defendant has the right to allocute, that is to address the court directly, in connection with

his or her sentence. *State v. Cerce*, 46 *N.J.* 387, 393–95, 217 *A.*2d 319 (1966). That right is well-established and has been embodied in our Court Rules. As such, *Rule* 3:21–4(b) requires the sentencing court to inquire specifically of a defendant whether he or she wishes to speak on his or her own behalf to present information in mitigation of the punishment. The *Rule*, however, limits the right of allocution to defendant only or, at his or her option, to defendant's counsel.

Although not part of *Rule* 3:21–4(b), a similar right to address the court directly has been extended to victims of crimes. In 1985, through the enactment of the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38, the Legislature began to grant crime victims and witnesses a variety of rights. The statute assures victims of the right to be treated with dignity and the right to be informed about the criminal justice process, and it has also defined who qualifies as a victim for purposes of exercising these rights. *See N.J.S.A.* 52:4B–37. Within a year of the passage of the Crime Victim's Bill of Rights, the criminal code was amended to expand these rights by allowing victims or family members of murder victims to have their written statement included in a defendant's presentence report, and to be advised of that right. *L.* 1986, *c.* 85, § 1 (codified at *N.J.S.A.* 2C:44–6).

In 1991, two significant events occurred. First, the Legislature amended the Crime Victim's Bill of Rights to permit victims to submit to the county prosecutor's office a written statement about the impact of the crime on the victim or the victim's family and, more important, to allow them to present victim impact statements to the sentencing court. *L.* 1991, *c.* 44, § 1 (amending *N.J.S.A.* 52:4B–36 by adding subsections (m) and (n)). Moreover, in 1991, the people of our State added their voice on the subject, through their "overwhelming" vote to amend our Constitution with the addition of the Victim's Rights Amendment. *N.J. Const.* art. I, ¶ 22; *see State v. Muhammad*, 145 *N.J.* 23, 33–34, 678 *A.*2d 164 (1996) (explaining history of adoption of Victim's Rights Amendment). Although the Victim's Rights Amendment does not ex-

pressly accord victims the right to be heard in connection with a sentence, it vested in the Legislature the authority to specify those rights that will be afforded to victims. It thereby embraced those statutes that provide the right "[t]o make, prior to sentencing, an in-person statement directly to the sentencing court concerning the impact of the crime," *N.J.S.A.* 52:4B–36(n), and that define a victim as "the nearest relative of the victim of a criminal homicide," *N.J.S.A.* 52:4B–37, meaning "spouse, parent, grandparent, stepfather, stepmother, child, grandchild, brother, sister, half brother, half sister, or spouse's parents," *N.J.S.A.* 52:4B–2.

By constitutional amendment, statute, and our Court Rules, a class of people who have a right to be heard in person in connection with a sentencing has been established, and it is a universe that does not include family, friends or supporters of defendants. We cannot, however, end our analysis of this matter with that observation because juxtaposed against that framework of unquestioned rights are practices that sentencing courts routinely follow. For example, although a strict reading of the statute would allow only a single person to speak for the victim, by custom and practice, many sentencing judges exercise their discretion to permit multiple members of a victim's family to address the court. Similarly, sentencing courts commonly permit defendants' family members and others, including spiritual advisors, to address the court in an effort to call attention to facts about the defendant that bear upon the sentence to be imposed but are not otherwise plain from the record. *See, e.g., Bieniek, supra,* 200 *N.J.* at 605, 985 *A.*2d 1251 (commenting that sentencing court heard from defendant's father, grandmother, and aunt); *State v. Johnson,* 118 *N.J.* 10, 21–22, 570 *A.*2d 395 (1990) (Stein, J., dissenting) (noting that defendant's wife, brother, brother-in-law, employer, and pastor testified at sentencing on behalf of defendant); *State v. Kent,* 212 *N.J.Super.* 635, 638, 515 *A.*2d 1275 (App.Div.1986) (explaining that sentencing court heard from patient of alcohol treatment program concerning defendant's successful completion of program).

We have recognized implicitly that sentencing courts can and do exercise discretion permissibly in allowing members of a defendant's family or others who appear on defendant's behalf to be heard. *See Bieniek, supra,* 200 *N.J.* at 605–12, 985 *A.*2d 1251. The question presented in this appeal is whether refusing to hear from defendant's family member or doing so without giving an explanation for that choice is an abuse of discretion that warrants relief.

■ We begin, therefore, with those propositions that are beyond dispute in the record before this Court. First, there can be no doubt that Ms. Small qualified as a relative within the meaning that term's statutory definition, *see N.J.S.A.* 52:4B–36(n), –37, and therefore had a right to speak. At the time of defendant's sentencing, the victim's oldest child was only eight years of age and his other two children were infants. Certainly Ms. Small, as the mother of those three surviving children, was the person who would be able to give voice to the impact that Bailey's death had on them. There is no support for defendant's argument that the sentencing court abused its discretion by permitting her to speak. Nor is there any basis on which we can conclude that the court, by referring only to "the person" from the victim's family who would be called upon to speak, intended to foreclose any other person with a statutory right from also being heard. We therefore reject defendant's arguments that the proceeding was unfair as it related to Ms. Small.

■ Second, as the Appellate Division panel recognized, the sentence itself was supported by the sentencing court's review and weighing of the aggravating and mitigating factors that applied, or that had been called to the sentencing court's attention. Looking solely at the record that the sentencing court considered, we can find support for the conclusion that the aggravating factors preponderated and for the imposition of the agreed-upon sentence of twenty years. Further, defendant's new argument, that his stepfather could have offered information to support mitigating factor eleven, would not alter that analysis. Although there was no

proffer as to what defendant's step-father intended to say during the sentencing proceeding, that mitigating factor was not among those called to the court's attention by counsel and, in any event, would apply only if defendant's step-father was his dependent. *See N.J.S.A.* 2C:44–1(b)(11) (providing that court may consider as mitigating factor that "imprisonment of the defendant would entail excessive hardship to himself or *his dependents*" (emphasis added)). Nothing in the record suggests that defendant was supporting his step-father or any other family members.

Finally, defendant's assertion that he received "the maximum" possible sentence is without merit, because the crime to which he pled guilty carried with it a maximum sentence of thirty years, *N.J.S.A.* 2C:11–4(c) (providing that sentencing range for aggravated manslaughter is ten to thirty years), and the crime that he avoided being tried for, namely first-degree murder, carried with it the possibility of a life sentence, *N.J.S.A.* 2C:11–3(b)(1) (providing that sentencing range for murder is thirty years to life imprisonment). The only sense in which the sentence imposed was the "maximum" is that it was the longest period of imprisonment that defendant faced as a result of his plea agreement.

 Recognizing that there is nothing in the record itself to demonstrate that the sentence was "clearly mistaken" or "shock[ing to the] judicial conscience," the appellate panel nonetheless concluded that the sentencing court had abused its discretion by refusing to hear defendant's step-father or, at least, by failing to express a reason for that choice. In fashioning its remedy, however, the appellate panel did not simply remand the matter to the sentencing court for an explanation of the reasons why the request on behalf of defendant's step-father was rejected, but instead ordered that there be a new sentencing hearing and directed the court to hear whatever it is that defendant's step-father might wish to say. By ordering that specific form of relief, however, the appellate panel effectively foreclosed any explanation that the sentencing court might have offered for its choice, and, at least in theory, created a new right to speak that is unbounded by

any set of rules or definitions. We turn, then, to an examination of the source that the panel relied upon as its support for that relief.

As part of the explanation for its reasoning that defendant's step-father should have been permitted to speak at the sentencing proceeding, the panel discussed *Moore, supra,* and *DiFrisco, supra,* two of this Court's decisions that the State had relied upon in urging this Court to reach the opposite result. Although the panel rejected those decisions as distinguishable, it utilized some of the language relating to the desires of family members to be heard as the basis for its conclusion that this sentencing court's refusal to hear defendant's step-father was arbitrary. Careful review of those precedents, therefore, is central to our consideration of this issue.

Both *Moore, supra,* and *DiFrisco, supra,* arose in the context of penalty phase proceedings in capital prosecutions. As such, each decision was informed by the United States Supreme Court's jurisprudence governing submission of character evidence in capital cases. *See Lockett, supra,* 438 *U.S.* at 604 & n. 12, 98 *S.Ct.* at 2964–65 & n. 12, 57 *L.Ed.*2d at 990 & n. 12 (permitting evidence that relates to any aspect of defendant's character; reserving trial court's right to exclude irrelevant proffers). Following the reasoning of the United States Supreme Court, we held that only evidence that bore on defendant's character would be admissible in a capital penalty phase proceeding. *See State v. Rose,* 120 *N.J.* 61, 64–65, 576 *A.*2d 235 (1990) (rejecting proffer of testimony by three clergymen about impropriety of death penalty and by sociologist concerning its deterrent effect as insufficiently particular to defendant); *State v. Davis,* 96 *N.J.* 611, 617–18, 477 *A.*2d 308 (1984) (defining "character" for purpose of evaluating relevance of proffered testimony).

More to the point, we expressly "decline[d] to extend the 'narrowly-defined right' of allocution accorded the capital defendant to allow witnesses to plead for mercy." *Moore, supra,* 122 *N.J.* at 479, 585 *A.*2d 864 (citation omitted). We therefore con-

cluded that a court could refuse to permit witnesses in a capital trial's penalty phase to plead for mercy on defendant's behalf. *Id.* at 479–80, 585 *A.2d* 864. However, in that unique setting, we also recognized that the jurors who are charged with deciding whether the death penalty will be imposed might expect family members to plead for mercy and might, therefore, draw an impermissible adverse inference if such testimony were not offered. *Id.* at 480, 585 *A.2d* 864.

It was in that narrow context that we used the descriptive phrase about the "uniquely natural and human" desires of family members, *ibid.*, finding in it support for our concern about the effect on the jury in a death penalty proceeding if there were no pleas for mercy. That concern led us to conclude that the court, in such a proceeding, could exercise its discretion to permit a family member to make a plea for mercy to the jury, warning, however, that such pleas should not be cumulative. *Ibid.* Thereafter, we reiterated our concern about cumulative testimony and warned that pleas for mercy could not be allowed to sway the jury, improperly, to act out of sympathy. *DiFrisco, supra,* 137 *N.J.* at 506, 645 *A.2d* 734. We therefore found no abuse of discretion when a court, in the penalty phase of a capital case, permitted only one of the defendant's three proffered witnesses to make a direct plea for mercy. *Id.* at 506–07, 645 *A.2d* 734.

Sentencing proceedings in non-capital cases do not give rise to such concerns. Unlike the procedures that once governed our death penalty cases, the decision about an appropriate sentence is made by a judge rather than by jurors to whom evidence and testimony is presented. Although considerable discretion is accorded to our sentencing courts, they are called upon to evaluate the information made available to them against statutory aggravating and mitigating factors in accordance with the principles we have described. Unlike jurors in capital penalty proceedings, sentencing courts do not expect to hear direct pleas for mercy from a defendant's family or friends and certainly would not draw an impermissible inference from the absence of such a plea. By

relying on our capital penalty jurisprudence to justify the remand in this matter, the appellate panel imported concepts devised for that unique setting into ordinary sentencing proceedings, where they do not serve their original purpose.

In our review of this matter, we, like the appellate panel, are hampered by the sparse record, which gives no clue as to why or on what basis the sentencing court reached its decision about how it would proceed and therefore provides us with no reason to evaluate against an abuse of discretion standard. We return, therefore, to our consideration of the issue before us. First, it is the absence of an expressed reason for the sentencing court's choice that impedes effective appellate review, rather than the choice itself. That being the case, the appropriate remedy would have been, and still is, a remand for an expression of reasons, because it is only then that there can be confidence in the sentence imposed. That being so, the appellate panel erred in its remand for a resentencing, coupled with a direction that defendant's step-father be permitted to speak, both because it did not address the trial court's shortcoming and because it appeared to create a new and unbounded right to be heard.

Second, in its explanation of the reasons for its remand, the appellate panel offered suggestions about reasons that would have supported the sentencing court's decision to reject the statement from defendant's step-father, but that were not evident in the record. For example, the panel noted that the request could have been denied in order to prevent the hearing from becoming "unduly protracted," presumably a reference to the court's inherent power to control the proceedings. Although we can conceive of other explanations that would suffice, those possible reasons can only be understood by considering the larger context in which sentencing proceedings are conducted, a matter to which we turn.

Our recitation of the history that has led to those provisions in our Constitution and statutes that guarantee crime victims and their survivors the right to address the court directly at sentencing demonstrates the concern of the people of this State and our

elected representatives for crime victims and their suffering that transcends anything that might be expressed by a defendant's family. But that concern is addressed both by ensuring that those individuals will be heard and by permitting them to speak on matters that are different from the ones that otherwise permissibly inform the court's determination of a just sentence.

 When considered in juxtaposition with the statutory framework that governs the court's imposition of sentence, the rights afforded to crime victims and their survivors are unique. To be sure, the defendant's right of allocution is similar in that it ensures the right to address the court directly, but it lacks the breadth of subject matter afforded to crime victims and their survivors. Moreover, other than defendants, and crime victims or their survivors, there is no absolute right to speak at a sentencing proceeding; instead, permitting others to address the court directly is a matter entrusted to the sentencing court's discretion.

 In exercising that discretion, courts should be guided by this Court's recognition that they need not entertain mere pleas for mercy and need not permit presentations that are cumulative or that merely repeat previously-submitted written comments. Nor are they required to permit presentations that are scurrilous, vengeful, or inflammatory. Moreover, courts should consider whether the individual seeking to be heard on defendant's behalf has information that bears upon an aggravating or mitigating factor, and may require a proffer consistent with one of those factors from defendant's counsel, electing to limit the grant of permission accordingly.

There well may be other reasons, not evident in this record and not called to our attention, on which the sentencing court might have based its decision, some of which would constitute a permissible exercise of discretion and others of which would not. We need not attempt to catalog them, and although we are aware of the widespread practice among our sentencing courts to permit members of defendants' families to be heard, we do not suggest that merely because a practice has arisen it is an abuse of discretion to

do otherwise. Rather, we note that in light of that practice, the abrupt rejection of this request without any explanation might have created the appearance that the proceeding was arbitrary or unfair.

In considering these questions, we note that this particular proceeding was somewhat unusual, because it began with the oral argument on defendant's motion to withdraw his guilty plea, in which he asserted that it was pressure from his family that caused him to plead guilty when he otherwise would not have done so. In light of that assertion, the family member who asked to speak might well have been able to shed light on why, notwithstanding that pressure to plead, defendant's family had not written him off, but saw an opportunity for him to be rehabilitated. In these unusual circumstances, without hearing defendant's step-father, the court might have concluded, perhaps erroneously, that defendant's family not only believed he was guilty, but that they also believed that the agreed-upon highest permissible sentence was justified.

We cannot envision every possible situation that will confront our sentencing courts as they carry out their weighty responsibilities. We reiterate that they have wide discretion in arriving at a just sentence and that their exercise of discretion will not be second-guessed. Nonetheless, it remains their duty to impose a just and fair sentence, bounded by the applicable statutes and Court Rules, and to do so with sensitivity to the way in which the proceedings are conducted in order to ensure that the proceedings themselves bear the hallmarks of fairness. *See Offutt v. United States*, 348 *U.S.* 11, 14, 75 *S.Ct.* 11, 13, 99 *L.Ed.* 11, 16 (1954) ("[J]ustice must satisfy the appearance of justice."); *State v. Deutsch*, 34 *N.J.* 190, 206, 168 *A.2d* 12 (1961) ("It is vital that justice be administered not only with a balance that is clear and true but also with such eminently fair procedures that the litigants and the public will always have confidence that it is being so administered."); *see also In re Commitment of Edward S.*, 118 *N.J.* 118, 139, 570 *A.2d* 917 (1990) (providing that "public confi-

dence in the administration of criminal justice is of towering importance, and when it can be legitimately accommodated, it should be"); *State v. Williams*, 93 *N.J.* 39, 54–55, 459 *A.*2d 641 (1983) (recognizing that pretrial proceedings that are open to public support "appearance of fairness" and "encourage a general appreciation of the administration of criminal justice").

We do not today alter the rules governing who may speak at a sentencing proceeding that are already fixed by the Constitution, statutes, and Court Rules. We reject the appellate panel's implicit mandate that a right to be heard is to be extended to some unspecified class of family members of any and all defendants. On the contrary, the decision about who, apart from those whose rights to speak are already established, may be heard remains a matter that is committed to the sentencing court's discretion. However, to the extent that the choice about who may speak is an exercise of discretion, it shares the same attributes of all discretionary determinations, namely, it must be accompanied by some expression of reasons sufficient to permit appellate review.

It is in failing to consider the possibility that the sentencing court could have articulated an appropriate reason for rejecting the request that defendant's step-father be heard, and in mandating that he be heard in the course of a new sentencing proceeding, that the panel erred. The defect in the sentencing proceeding was not necessarily in the court's choice, but in failing to explain the reasons for deciding to reject it and, as a result, in failing to create an adequate record for review.

In this matter, the paucity of the record precludes us from deciding whether the refusal to permit defendant's step-father to speak was actually arbitrary or unreasonable. In an abundance of caution, and in keeping with our concern that proceedings not only are fair but that they be conducted so as to assure the public and participants that they are fair, we are constrained to remand this matter to the sentencing court for further proceedings consistent with this opinion.

## VI.

The judgment of the Appellate Division is affirmed as modified and the matter is remanded to the Law Division for further proceedings.

Justice LONG, concurring.

I am in agreement with the majority that this matter should be remanded to the trial judge for a statement of the reasons he refused to permit defendant's stepfather to speak at sentencing. I write separately to express my concern over a thread that runs through the Court's opinion with which I disagree and which I believe sends the wrong message.

In my view, the rights extended to crime victims by statute, *N.J.S.A.* 52:4B-34 to -38 and *N.J.S.A.* 2C:44-6, and later by the Constitution, *N.J. Const.* art. 1 § 22, are not pertinent to the question of whether and under what circumstances a defendant's family member with relevant information should be permitted to speak at sentencing. Certainly, the presentation of a victim impact statement is a legal entitlement. But that entitlement does not suggest, even obliquely, a concomitant disentitlement on the part of defendant to produce a family witness where that witness has evidence bearing on a sentencing factor.

The majority insists on viewing a victim's right to an impact statement as somehow diminishing a defendant's application to present a relevant sentencing witness. That perspective bears with it a stigma of disapproval that I deem legally unwarranted and an incursion on the principle that our courts are open to all witnesses who have proper information to present.

Accordingly, if upon a proffer it appears that a defendant's family member has evidence that bears on an aggravating or mitigating factor, the defendant must be permitted to present it. Indeed, if an aggravating or mitigating factor is rooted in the record, the judge has no discretion to refuse to consider it. *State v. Dalziel*, 182 *N.J.* 494, 504-05, 867 *A.*2d 1167 (2005). That is not,

as the majority suggests, some rump process that has developed in our courts, but is at the very heart of a sentencing proceeding at which the judge is required to weigh aggravating and mitigating factors in order to craft an appropriate disposition. Obviously, if a person has evidence that will affect the aggravating-mitigating calculus, he should be heard.

To be sure, the judge is not without discretion in that realm. For example, upon a proffer, he may act to avert the cumulation of evidence. But that discretion does not extend to the barring of relevant evidence. Obviously, in ruling either way, the judge must explain his reasons, thus paving the way for appellate review. However, it goes without saying that a courtroom "practice" never to permit any defendant's family member to speak would be arbitrary and unreasonable.

Chief Justice RABNER joins in this opinion.

Justices ALBIN and WALLACE, dissenting.

We believe that certification was improvidently granted in this case and therefore would dismiss this appeal. We have reviewed thousands of petitions for certification since joining the Court. We do not recall once when an issue has arisen over a trial court improperly exercising its discretion to allow or deny a defendant's family member to speak at sentencing. In deciding this case, we fear that the plurality opinion is likely to cause more problems than it will resolve.

The Appellate Division, in remanding to the trial court for a new sentencing hearing, stated: "While defendant may not have had an absolute right to have his stepfather speak, the state of the record satisfied us that the decision to refuse permission could reasonably be categorized as arbitrary." Neither the plurality nor concurring opinion disputes that point. The precise standard that should guide the trial court in determining whether a family member should speak at sentencing is not settled today in light of the Court's split.

Given that the plurality and concurring opinions are discoursing on the propriety of the Appellate Division's order, we add the following. In remanding to the trial court for consideration of possibly relevant evidence bearing on sentencing, the appellate panel should not have announced that it "had no quarrel with the quantum of the sentence ultimately imposed by the trial court." The plurality opinion says much the same. *Ante* at 293, 997 *A.*2d at 200. Whenever a sentence is based on a potentially incomplete record—that is, so long as there is a possibility that relevant evidence on a mitigating or aggravating factor was improperly withheld from the trial court—it is premature to suggest that the sentence imposed was appropriate, even on the existing record.

Moreover, we cannot agree with the plurality opinion that the right of a victim to speak at sentencing conflicts with the defendant's right to present relevant evidence that may inform the court in fulfilling its sentencing function. There may be times when live testimony of a defense witness at sentencing will do just that.

We expect that trial courts will continue to exercise their discretion at sentencing fairly, without regard to passion or prejudice, to the end that a just sentence will be imposed. Because none of the standards for certification are satisfied here, *R.* 2:12–4, we would rule that certification was improvidently granted. *See State v. Bieniek,* 200 *N.J.* 601, 612, 985 *A.*2d 1251 (2010) (Long, J., dissenting).

*For affirmance as modified/remandment*—Chief Justice RABNER, Justices LONG, LaVECCHIA, RIVERA–SOTO and HOENS—5.

*For dissent*—Justices ALBIN and WALLACE—2.