**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5048-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS REED, a/k/a
THOMAS REID, THOMAS
RIED, and DAVID RED,

     Defendant-Appellant.

_____

Submitted December 12, 2018 – Decided January 15, 2019

Before Judges Koblitz and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 16-01-0100, 16-01-0108, 16-02-0350, 16-03-0596 and 16-06-1161.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael T. Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Ian D. Brater, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals after a jury convicted him of second-degree robbery, an attempted theft by threat, N.J.S.A. 2C:15-1(a)(1), third-degree possession of drugs, N.J.S.A. 2C:35-10(a)(1), second-degree witness tampering, N.J.S.A. 2C:28-5(d), and the disorderly persons offense of hindering apprehension, N.J.S.A. 2C:29-3(b)(1). On May 12, 2017, the court sentenced him to an aggregate term of twenty years, with twelve years and nine months of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[1] He received concurrent terms on three unrelated convictions stemming from three additional indictments. Defendant appeals, arguing that the court did not use the current legal standards in analyzing the evidence at the pretrial eyewitness identification hearing. We agree and remand for further findings applying the analysis as set forth in State v. Henderson, 208 N.J. 208, 288-94 (2011).

---

[1] He was tried on Indictment Nos. 16-03-0596 and 16-06-1161 in one trial. Defendant raises no issues relating to his guilty pleas to Indictments No. 16-02-0350 and 16-01-0108, or his conviction after trial of Indictment No. 16-01-0100. His sentences on these convictions were imposed concurrently to the twenty-year sentence imposed after this trial.

A-5048-16T3

Defendant was convicted of a robbery near a fried chicken fast food restaurant at around 11:00 p.m. The victim told the police that he saw a man in the restaurant who later attempted to steal the victim's wallet when he was walking home with his food. The robber asked the victim if he had stolen a friend's bicycle, then grabbed the victim and demanded his wallet, while threatening him. The victim refused to surrender his wallet and defendant fled. The victim described the man as a "black male" who was "wearing a black hat . . . gray sweater, gray pants, [and] . . . riding a bicycle." A short time later, the police stopped defendant, who matched the description given and had two packets of heroin on his person, and brought the victim to see defendant. The victim stayed in the back seat of the police car while defendant, who was handcuffed, walked in front of the car. The victim identified defendant as the robber.

The victim received three letters from defendant offering to pay him $50 if he would recant his testimony. Defendant testified that he and the victim had a dispute over payment for a bicycle, he did not rob the victim, and he sent the letters in an effort to convince the victim to tell the truth.

Defendant argues on appeal:

> POINT I: THE TRIAL COURT ERRED WHEN IT APPLIED THE MANSON/MADISON

3

FRAMEWORK FOR ASSESSING THE EYEWITNESS IDENTIFICATION INSTEAD OF THE UPDATED HENDERSON PROCEDURE.

POINT II: THE DISCRETIONARY EXTENDED-TERM SENTENCE SHOULD BE VACATED OR REDUCED BECAUSE IT WAS MANIFESTLY EXCESSIVE AND PROCEDURALLY DEFECTIVE.

I. Identification analysis.

At the pre-trial Wade[2] hearing, the court mistakenly used the Manson/Madison[3] rather than the Henderson test to analyze the evidence surrounding the showup identification. The court stated, "I find that the identification made by [the victim] is reliable and all of the factors under Madison have been met." The Manson/Madison test required the defense to prove by a preponderance of the evidence that the police procedures were so "impermissibly suggestive" they resulted in a "very substantial likelihood of irreparable misidentification." Madison, 109 N.J. at 232 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). The court applied the five Manson/Madison factors.

> These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of

---

[2] United State v. Wade, 388 U.S. 218, 242 (1967).

[3] Manson v. Brathwaite, 432 U.S. 98, 113-14 (1977); State v. Madison, 109 N.J. 223, 244-45 (1988).

4

attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

[Manson, 432 U.S. at 114.]

See also Madison, 109 N.J. at 239-40.

In Henderson, the Supreme Court found that the Manson/Madison test did "not provide a sufficient measure for reliability," it did not deter "suggestive police practices," and it "overstate[d] the jury's innate ability to evaluate eyewitness testimony." 208 N.J. at 285-87. Henderson requires a more in-depth analysis. See id. at 288.

The Court in Henderson discussed "system and estimator variables." Id. at 288-89.

> Two principal changes to the current system are needed . . . . [F]irst, the revised framework should allow all relevant system and estimator variables to be explored and weighed at pretrial hearings when there is some actual evidence of suggestiveness;
>
>    . . . .
>
> [T]o obtain a pretrial hearing, a defendant has the initial burden of showing some evidence of suggestiveness that could lead to a mistaken identification. . . . [T]he State must then offer proof to show that the proffered

eyewitness identification is reliable—accounting for system and estimator variables . . . .

[Ibid. (emphasis in original).]

System variables include whether the police "warn[ed] the witness that the suspect may not be the perpetrator and that the witness should not feel compelled to make an identification[.]" Id. at 290. Estimator variables include: whether "the event involve[d] a high level of stress"; whether "a visible weapon [was] used during a crime of short duration"; how close the witness and perpetrator were to each other; "[h]ow much time elapsed between the crime and the identification"; and the level of confidence expressed by the witness "at the time of the identification before receiving any feedback or other information[.]" Id. at 291-92.

Here, the police did not instruct the victim prior to the showup that defendant "may or may not be the culprit." Id. at 261. The Supreme Court stated in Henderson:

> As with lineups, showup administrators should instruct witnesses that the person they are about to view may or may not be the culprit and that they should not feel compelled to make an identification. That said, lineups are a preferred identification procedure because we continue to believe that showups, while sometimes necessary, are inherently suggestive.
>
> [Ibid.]

Pointing to studies on showup identifications, the Court noted that "[e]xperts believe the main problem with showups is that—compared to lineups—they fail to provide a safeguard against witnesses with poor memories or those inclined to guess, because every mistaken identification in a showup will point to the suspect. In essence, showups make it easier to make mistakes." Id. at 260-61.

Defendant seeks a new trial, or, in the alternative, "a new hearing so that the trial court may apply the correct law." We agree with defendant that a remand is warranted. The court should apply the Henderson standards to the evidence adduced at the pre-trial hearing, without the need to conduct a new evidentiary hearing.

## II. Sentence.

Defendant argues also that, although he was indisputably eligible for a discretionary extended term pursuant to the persistent offender statute, N.J.S.A. 2C:44-3(a), the court improperly considered his record when imposing an extended term and improperly considered his prior record again when finding aggravating factor six. N.J.S.A. 2C:44-1(a)(6).

An appellate court applies "a deferential standard of review to the sentencing court's determination, but not to the interpretation of a law." State v. Bolvito, 217 N.J. 221, 228 (2014). "Appellate review of sentencing decisions

A-5048-16T3

is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). An appellate court may not "substitute [its] judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014).

The court found aggravating factors three, the risk of reoffending, six, defendant's prior criminal record, and nine, the need to deter defendant and others. N.J.S.A. 2C:44-1(a)(3), (6) and (9). The court focused on defendant's lengthy, thirty-two-year criminal record. Defendant was forty-six years old at the time of sentencing. He had many more convictions than those necessary to impose an extended term. The court did not abuse its discretion in imposing a fifteen-year extended term subject to NERA for the robbery conviction.

Reversed and remanded for a reevaluation of the evidence produced at the Wade hearing applying the Henderson criteria. If the identification is deemed inadmissible, defendant will be afforded a new trial. If the court finds the showup identification to be admissible, no new trial is necessary

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION