**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3522-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER J. MCKENNA,

    Defendant-Appellant.

_____

Submitted November 8, 2018 – Decided  February 7, 2019

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-08-1401.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Carey J. Huff, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Christopher J. McKenna was convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). On February 3, 2017, the judge sentenced defendant to state prison for eight years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. He appeals and we affirm.

The facts are drawn from the record. Shortly after midnight on January 1, 2015, Andrew Pezza, the victim, and two friends went to a bar to continue drinking. Upon arrival, Pezza noticed his cell phone was missing, and rushed out to his car to see if it was there. He slammed the front door to the bar, causing a glass picture frame to fall on the floor and break. Defendant got up from the bar and followed the victim. As he later explained to police officers, he wanted Pezza "held accountable for his actions[.]" Defendant was neither a bar employee nor acquainted with him.

According to Pezza, he was attacked from behind, and punched repeatedly, even while he was on the ground. His injuries included short-term memory loss, surgery to implant man-made bone in a depressed area in the front of his skull or forehead, fractures of his sinuses and a nasal bone, and hemorrhaging. When the victim testified at trial, he still suffered from his injuries. Pezza is permanently scarred, has trouble with his balance, and leans to one side as he walks.

Defendant was seen chasing after and attacking Pezza by Thomas Dyson, a co-worker over whom defendant then had supervisory authority. Initially, Dyson told police that the victim punched defendant first and that defendant only hit Pezza three or four times. Dyson videotaped the event, but at defendant's request, forwarded the video to defendant and deleted it from his cell phone. Dyson later told police that the victim never even attempted to hit defendant and apologized repeatedly in an effort to stop defendant's onslaught.

Another eyewitness said she saw multiple fists punching and legs kicking the victim as he lay crying on the ground. She acknowledged on cross-examination that she could not tell if it had been one person or two, but after the assault stopped, she saw defendant drag Pezza on his back by his shirt from the parking lot across the street, where defendant "threw" the bleeding and severely injured victim onto a bench outside the bar, and fled. She testified that she identified defendant by the red and black plaid shirt he wore on the night of the incident.

Police later contacted defendant, who, shortly after assaulting the victim, was injured in a separate confrontation at another location. He told police that he had been attacked, was in the hospital, and could not speak to them at that time. When defendant finally arrived at police headquarters with his attorney

A-3522-16T4

two months later, he claimed Pezza had been acting rowdy after he broke a window in the bar, so defendant followed him. Defendant claimed Pezza took a swing at him, and that he punched the victim three or four times before walking him across the street. He also maintained he had witnesses who would corroborate this version of events, although they were never interviewed by police. Eventually, defendant acknowledged that the injuries for which he was treated at the hospital were not inflicted by the victim but resulted from an unrelated event.

Before trial, the judge signed a consent order dismissing the affirmative defenses of duress and self-defense, after they were withdrawn by counsel. Nonetheless, the judge gave the jury a self-defense instruction. The judge also complied with the State's request to charge the jury as to flight. The judge followed the model jury charges, and instructed the jury as to second and third-degree aggravated assault and simple assault. No objection was made by counsel to the proposed closing instructions. No objection was raised by either attorney after the judge's closing charge.

At sentencing, the judge found that defendant, who at the time was twenty-nine years old, had an extensive juvenile history including burglary, aggravated assault, robbery, and criminal mischief. As an adult, he was convicted on four

occasions of indictable offenses and violated probation. The indictable offenses included aggravated arson, third-degree aggravated assault, and burglary. Defendant had served prior state prison terms, and had maxed out on at least one sentence. The same day that defendant assaulted Pezza, he was charged with the eventually dismissed disorderly persons offense of attempting to cause bodily injury to another.

During the sentencing hearing, the judge observed that after the verdict was announced, defendant appeared to be in shock. She overheard him say, "but I'm a changed man." The judge did not agree that defendant was a changed man because he showed so little remorse. He had been in and out of jail most of his life on offenses that included violence, this being his third aggravated assault. Furthermore, the judge described the attack in detail, including the fact that during the assault the victim cried and begged defendant to stop. When interviewed by the probation officer who authored defendant's presentence report, defendant said he wanted to sue the victim for the injuries he had received that night, although he eventually acknowledged that those injuries occurred later and were not inflicted by Pezza.

The judge would not allow defendant's character witnesses to testify. She said she had read all twenty-three letters she received supporting defendant,

5

including letters from persons who might have been present. Only two of those mentioned the harm to the victim.

The judge found aggravating factor three, the risk defendant would reoffend, N.J.S.A. 2C:44-1(a)(3); aggravating factor six, the extent of defendant's prior criminal record and seriousness of the convicted offense, N.J.S.A. 2C:44-1(a)(6); and aggravating factor nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9), and only mitigating factor eleven, that his imprisonment would result in excessive hardship to his family, N.J.S.A. 2C:44-1(b)(11). At the time, defendant had a two-year-old daughter and a step-child for whom he was financially responsible.

On appeal, defendant raises the following points of error for our consideration:

> POINT I
> WHEN SOME EYEWITNESSES PRESENTED A SCENARIO THAT POTENTIALLY INVOLVED MORE THAN ONE ACTOR INVOLVED IN THE OVERALL MELEE WITH THE VICTIM, IT WAS REVERSIBLE ERROR TO FAIL TO INSTRUCT THE JURY ON ACCOMPLICE LIABILITY AND TO FAIL TO EXPLAIN TO THE JURY THAT MULTIPLE ACTORS MIGHT POSSESS DIFFERENT STATES OF MIND AND, THUS, BE GUILTY OF DIFFERENT OFFENSES UNDER STATE V. BIELKIEWICZ.

POINT II

THE JURY INSTRUCTIONS ON SELF-DEFENSE --
THE ONLY AFFIRMATIVE DEFENSE AT ISSUE IN
THE CASE: (1) BADLY MISINFORMED THE JURY
ON THE CORRECT BURDEN OF PROOF; AND (2)
WAS NOT INCORPORATED INTO THE
INDIVIDUAL COUNTS AGAINST DEFENDANT,
THEREBY ALLOWING THE JURY TO CONVICT
BASED UPON THE SIMPLE ELEMENTS OF THE
CRIMES CHARGED WITHOUT EVER
CONSIDERING THE APPLICABILITY OF SELF-
DEFENSE TO THE CASE.

POINT III

A RESENTENCING REMAND IS REQUIRED
BECAUSE THE JUDGE SHOULD NOT HAVE
DENIED, WITH NO SIGNIFICANT STATEMENT
OF REASONS, THE DEFENDANT THE RIGHT TO
HAVE OTHERS SPEAK IN SUPPORT OF HIM AT
SENTENCING []; ADDITIONALLY, A REMAND IS
REQUIRED BECAUSE THE RESTITUTION
AWARD WAS ORDERED WITH NO
CONSIDERATION OF THE ABILITY TO PAY.

I.

It is well-settled that "appropriate and proper jury charges are essential to

a fair trial." State v. Savage, 172 N.J. 374, 387 (2002). The standard for

assessing the soundness of a challenged jury instruction is "'how and in what

sense, under the evidence before them, and the circumstances of the trial, would

ordinary . . . jurors understand the instructions as a whole.'" Ibid. (citing Crego

v. Carp, 295 N.J. Super. 565, 573 (App. Div. 1996)). Thus, "[a] portion of a

charge alleged to be erroneous . . . 'cannot be dealt with in isolation . . . [and] should be examined as whole to determine its overall effect.'" Ibid. (citing State v. Wilbely, 63 N.J. 420, 422 (1973)). However, the trial court need not use particular language in a charge so long as it adequately conveys the applicable legal principles to the jury. State v. Ball, 268 N.J. Super. 72, 113 (App. Div. 1993).

Even though a defendant generally waives the right to appeal an instruction if no objection is made at trial, we may still reverse on the basis of unchallenged error under the plain error standard. State v. Adams, 194 N.J. 186, 206-07 (2008); R. 2:10-2. The plain error standard permits us to "reverse on the basis of unchallenged error if . . . [it] was 'clearly capable of producing an unjust result.'" State v. Torres, 183 N.J. 554, 564 (2005) (citing R. 2:10-2). Indeed, "[p]lain error in the context of a jury charge is '[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant sufficiently grievous to . . . convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" Ibid. (citing State v. Jordan, 147 N.J. 409, 422 (1997)).

## II.

Defendant first contends the court's failure to charge accomplice liability was reversible error. It is well-established that if multiple individuals participate in the same criminal act, those involved may be guilty of different degrees of offense, depending on their own actions and culpability. State v. Franklin, 377 N.J. Super. 48, 55 (App. Div. 2005) (citing State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993)). Under the statute governing accomplice liability, "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." N.J.S.A. 2C:2-6(a). Further, a person may be held liable as an accomplice if that person purposefully aids or attempts to aid another in the commission of a crime. N.J.S.A. 2C:2-6(c).

Where "a prosecution is based on the theory that a defendant acted as an accomplice, the court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel." Bielkiewicz, 267 N.J. Super. at 527. That being said, "the obligation to provide the jury with instructions regarding accomplice liability arises only in situations where the evidence will support a conviction based on the theory that a defendant acted as an accomplice." State v. Crumb,

9

307 N.J. Super. 204, 221 (App. Div. 1997). Moreover, in order to charge a lesser-included offense, like accomplice liability, "there must be a rational basis for a jury to reject the greater [principal] charge." Franklin, 377 N.J. Super. at 56. Accordingly, "the failure to give a Bielkiewicz charge is not plain error where a jury could not reasonably conclude that defendant was an accomplice." State v. Oliver, 316 N.J. Super. 592, 597 (App. Div. 1998).

That is the case here—the testimony at trial established that defendant acted alone, not as an accomplice. That the eyewitnesses could not see what was happening at all times, and that they saw others standing around defendant while he kicked and punched the victim's head is not equivalent to a factual basis for an accomplice instruction. Thus no error occurred, much less prejudicial error.

## III.

We review defendant's contention that the self-defense instruction was deficient under the plain error standard as he did not object at trial. See State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010); R. 1:7-2. In assessing whether there was plain error, if the court uses language directly from a model jury charge, that factor is not "determinative, [but] is a persuasive argument in

favor of the charge as delivered." State v. Angoy, 329 N.J. Super. 79, 84 (App. Div. 2000).

A trial judge must charge the jury on self-defense "if there exists evidence in either the State's or the defendant's case sufficient to provide a 'rational basis' for [its] applicability." State v. Fowler, 453 N.J. Super. 499, 507 (App. Div. 2018) (citing State v. Blanks, 313 N.J. Super. 55, 69-70 (App. Div. 1998)). If such evidence exists, "the jury must be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts; acquittal is required if there remains a reasonable doubt whether the defendant acted in self-defense." State v. Kelly, 97 N.J. 178, 200 (1984). In providing the instruction, the trial court shall not misstate or dilute the State's burden to prove guilt beyond a reasonable doubt. State v. Medina, 147 N.J. 43, 59 (1996). Further, "[c]ontradictory and inconsistent charges are inherently inadequate as they 'create a reasonable likelihood that a juror understood the instructions in an unconstitutional manner.'" State v. Moore, 122 N.J. 420, 433 (1991) (citing Humanik v. Beyer, 871 F.2d 432, 442 (3d Cir.) (1989)).

There simply was no testimony that defendant acted in self-defense. The judge instructed the jury as follows:

> Self-defense is . . . the right of a person to defend
> against  seriously  threatened,  unlawful  force  that  is

11

actually pending or reasonably anticipated. When a person is in imminent danger of bodily harm, the person has the right to use force or even deadly force when that force is necessary to prevent the use against him of unlawful force. The force used by the defendant must not be significantly greater than and must be proportionate to the unlawful force threatened or used against the defendant.

. . . .

If you find that the defendant knew that he could avoid the necessity of using deadly force by retreating, provided that the defendant knew he could do so with complete safety, then the defense is not available to him.

In your inquiry as to whether a defendant who resorted to deadly force knew that an opportunity to retreat with complete safety was available, the total circumstances, including the attendant excitement accompanying the situation, must be considered.

. . . .

The State has the burden to prove to you beyond a reasonable doubt that the defense of self-defense is untrue. The defense only applies if all the conditions or elements previously described exist. The defense must be rejected if the State disproves any of the conditions beyond a reasonable doubt.

. . . .

The burden of proof upon the State is to prove beyond a reasonable doubt that the defendant knew he could have retreated with complete safety. . . . If the State carries its burden, then you must disallow the

> defense. If the State does not satisfy its burden and you have a reasonable doubt, then it must be resolved in favor of the defendant and you must allow the claim of self-defense and acquit the defendant.

We do not agree that the charge misinformed this jury on the burden of proof, and that even if that were the case, it would have prejudiced the outcome. The judge gave the charge in an abundance of caution, but we are hard-pressed to see any basis for the defense.

The victim had no contact with defendant whatsoever before leaving the bar. Defendant chased Pezza as he crossed the street to his car, sucker-punched and knocked him onto the ground, and then proceeded to strike him repeatedly in the head and torso while the victim pleaded for defendant to stop. Nothing in those facts gave rise to the defense. Furthermore, here the judge even asked the jury to address the threshold question of self-defense on the verdict sheet, before moving on to the issue of whether defendant assaulted Pezza. The instruction the judge gave tracking the model charge more than sufficed. Asking the jury to address self-defense first was an eminently reasonable way to eliminate the issue before consideration of any other question regarding guilt. There is no merit to the claim that the instruction was fatally flawed.

13

## IV.

Finally, defendant contends that the court erred by precluding testimony from defendant's character witnesses, and that the matter should be remanded for that purpose. We disagree.

"Other than defendants, and crime victims or their survivors, there is no absolute right to speak at a sentencing proceeding." State v. Blackmon, 202 N.J. 283, 305 (2010). Aside from those who have the right to speak at sentencing, deciding who else may be heard "remains a matter that is committed to the sentencing court's discretion." Id. at 307. "However, to the extent that the choice about who may speak is an exercise of discretion . . . it must be accompanied by some expression of reasons sufficient to permit appellate review." Ibid.

At the sentencing hearing, the judge denied defense counsel's request that defendant's family and friends speak on his behalf. She stated she had reviewed in detail the letters supporting him, which were incorporated into the presentence report. That she made close study of them is corroborated by her comment that out of the twenty-three letters, only two acknowledged the harm defendant inflicted on Pezza.

The sentencing judge was not required to allow statements that would merely have repeated information of which she was already aware. See id. at 305. Therefore, her decision not to allow defendant's character witnesses to speak in light of the ample documentation regarding his good character was not an abuse of discretion.

Finally, defendant complains that the restitution award was imposed without consideration of defendant's ability to pay. In this case, where defendant faces a lengthy period of incarceration, the $2735 imposed by way of restitution is not unreasonable. No hearing was requested at the time he was sentenced, and defendant's presentence report indicates his household income was $3500 a month. No remand is necessary in light of the modest restitution and defendant's income earning capacity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3522-16T4