226 N.J. Super. 441 (1988)
544 A.2d 883
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARK TAYLOR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted July 6, 1988.
Decided July 21, 1988.
*444 Before Judges GAULKIN and DREIER.
Alfred A. Slocum, Public Defender, attorney for appellant (Paul Gauer, Designated Counsel, of counsel and on the letter brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Annmarie Cozzi, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
*445 Defendant has appealed from a conviction of second degree sexual assault, N.J.S.A. 2C:14-2b. He was sentenced to a term of 10 years, the maximum permitted for a second degree crime, although the trial judge imposed no period of parole ineligibility.
On November 5, 1984 defendant awakened his four-year old niece who was spending the night at the home of her grandmother where defendant also resided. Although there was significant evidence of some penetration, the jury obviously found that defendant merely rubbed his penis against the victim's vagina and genital area and then left the victim's bedroom. Soon thereafter she entered the kitchen crying and upset, telling her aunt that her "poo poo" hurt. The aunt, who was baby-sitting with the child, took her into the bathroom and, receiving no further explanation, examined the child's vaginal area, noting that it was slightly inflamed. She then took the child to another area of the house away from where the other children were playing. The victim then told her aunt that defendant had pulled down her pants and stuck his "ding ding," which was sticking up, in her.
The aunt did not confront defendant, her brother, at that time because she did not know how he was going to react, but rather waited until the child's mother returned home in the early morning. She then immediately told the mother what happened the previous night, whereupon the mother also spoke to the young girl. The mother testified that the child explained that defendant had pulled down his pants and her pajamas and put his "ding ding" in her "poo poo."
The child was taken to United Hospital in Newark where she was examined. The doctor testified that she observed a generalized redness in the victim's entire external genital area, her hymen orifice was slightly enlarged, and there was a small abrasion on the opening to her hymen. There was also a 1/2 *446 centimeter laceration which appeared to be a recent wound in the child's labium majora.
Defendant testified at trial and denied doing anything to his niece; he admitted, however, that he was the only adult male in the house on the evening the alleged act occurred. While there had been some question whether the defendant had hidden when the police originally came to look for him, and defendant denied that he had done so, he admitted he hid in the basement when the police had dropped the aunt off at the family home.
Defendant produced three character witnesses to testify as to his truthfulness, but when he attempted to introduce opinion testimony from these same witnesses concerning the character of the victim, her mother and her aunt, the trial judge excluded the testimony under Evid.R. 4.
During trial, the mother testified that on occasion defendant would sleep with one of another sister's children. She was then asked whether she had ever heard of "any complaints about him doing to any of those kids ." After an objection to this question had been overruled, she answered, "Not with one of my sister's kids, but twice with my sisters ." After another unsuccessful objection and a request to strike the answer, the mother was permitted to complete her answer and add the names of two of her sisters. These questions, however, were posed by defense counsel on cross-examination even though the State had raised no issue concerning other improper sexual activity on the part of defendant.
Defendant urges five points on this appeal:
POINT I
Prejudicial instances of defendant's conduct not the subject of a criminal conviction were admitted into evidence contrary to Rules 47 & 55.
POINT II
Character evidence offered by defendant to impeach the credibility of State witnesses was erroneously and prejudicially excluded.
POINT III
Defendant was prejudiced by admission of alleged `fresh complaint' testimony which was not fresh.

*447 POINT IV
Fresh complaint witness gave hearsay accounts prejudicial to defendant and beyond the scope of fresh complaint. (Plain error).
POINT V
The sentence imposed was manifestly excessive and an abuse of discretion.

I
Defendant first argues that the statement concerning sexual impropriety with two of his sisters was an improper admission of other crimes evidence under Evid.R. 55. While the answer was not precisely responsive to the question posed, since it did not relate to improprieties with one of Tanya's "kids," defense counsel did raise the question of other complaints concerning defendant's conduct with children. This series of questions and answers was the only reference to such acts during the two days of testimony, and the court correctly precluded the prosecutor from further inquiring into any sexual acts defendant may have engaged in with his sisters. No reference was made to this testimony during summation.
Since this was an incidental statement and there was no development of this theme, we find a lack of the extreme prejudice present in other cases where evidence of other crimes or bad acts has been mistakenly admitted. Compare State v. Cooper, 165 N.J. Super. 57, 64 (App.Div.), app. dism. 81 N.J. 261 (1979), with State v. La Porte, 62 N.J. 312, 318 (1973). While the trial court should properly have limited the mother's answer to the precise question being posed to her, the issue was raised by defendant, not the prosecution; and the prosecution was properly limited in commenting upon the answer or further developing the area of inquiry. We determine that this error was harmless. R. 2:10-2.

II
The second point raised by defendant presents a question of first impression in this State. Evid.R. 47 provides in part that "[c]haracter evidence offered by the defendant may not be excluded under Rule 4." The language of this provision *448 is unique to New Jersey and has never been interpreted. The issue is whether the rule relates solely to an offer of evidence concerning the defendant's character or includes offers concerning the character of others whom the defendant seeks to impeach or bolster. The general rule on admission of character evidence is found in Evid.R. 20, discussed infra, and is subject to discretionary exclusion under Evid.R. 4.
As is noted in 1A Wigmore, Evidence (Tillers Revision, 1983), § 56:
[A] defendant may offer his good character to evidence the improbability of his doing the act charged, unless there is some collateral reason for exclusion; and the law recognizes none such. [Id. at 1161].
After discussing two exceptions to this rule which are considered no longer viable, the authors continue:
[R]ecent codifications of the law of evidence recognize neither of these limitations on the admissibility of character evidence when offered by an accused. [Id. at 1169].
Federal Rule of Evidence 404(a)(1), adopted from the 1974 revised Uniform Rules, allows "[e]vidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same" to be admitted. This rule is not excluded from the relaxation provisions of Fed.R.Evid. 403, the federal equivalent of Evid.R. 4. But Wigmore notes further that:
Taken by themselves, the codifications following the federal pattern are not entirely unambiguous since, in theory, Federal Rule of Evidence 403, and its counterparts in other jurisdictions ... might allow the exclusion of such relevant and otherwise admissible character evidence on the grounds of `unfair prejudice, confusion of the issues, or of misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' However, the language of the cases ... suggests that a defendant's right to offer character evidence is absolute. [Wigmore, supra, § 56 at 1170, n. 3].
Prior to the adoption of the New Jersey Evidence Rules, New Jersey common law did not appear to recognize any unlimited right of a defendant to introduce character evidence.[1] But even *449 under common law, character evidence relating to the defendant was not to be excluded. See State v. Micci, 46 N.J. Super. 454, 459-460 (App.Div. 1957), and the cases cited therein.
However, it is the "absolute" right described in Wigmore that was contained in the original Uniform Rules of Evidence upon which the New Jersey Evidence codification was based. The original 1953 Uniform Rules provided that "in a criminal action evidence of a trait of an accused's character as tending to prove his guilt or innocence of the offense charged ... may not be excluded by the judge under Rule 45 [the predecessor of our Evid.R. 4]."[2] The language of the original Uniform Rule was proposed by the May 1955 and March 1963 reports of the New Jersey Supreme Court Committee on Evidence to be incorporated in Rule 47 (and also in Rule 48 in the 1963 report) as a limitation on the exclusion of character evidence. The 1963 report adopted the language of the Uniform Rule, only substituting the words "the defendant on trial" for the word "accused."
We have been unable to locate any explanation for the change in language employed in the Rule[3] jointly enacted by the Court and Legislature in 1967 from that in the earlier drafts. The 1967 Rules of Evidence Commission report added a note to Evid.R. 47:
The restriction on exclusions under Rule 4 refers only to the defendant on trial in a criminal case who offers character witnesses to raise a reasonable doubt.
This comment, however, is ambiguous in that it does not state whether the Evid.R. 4 restriction is applicable to the character of witnesses generally or only as to that of defendant.
*450 We see, therefore, that the present federal rule, the revised 1974 Uniform Rule, the original 1953 Uniform Rule, the rules originally proposed in the 1955 and 1963 New Jersey reports, and the common law, all provide for an unlimited right of the defendant to introduce character evidence solely as to his own character. The argument that Evid.R. 47 is more expansive than these other authorities is illusory. The sentence in question must be read in context.
In a criminal proceeding, evidence offered by the prosecution of a trait of character of the defendant on trial may be admitted only if the judge has admitted evidence of good character offered by the defendant. Character evidence offered by the defendant may not be excluded under Rule 4. The credibility of a character witness testifying on behalf of the defendant may not be impaired by an inquiry into his knowledge of the defendant's alleged criminal conduct not evidenced by a conviction. [Emphasis supplied].
The sentence prior to the one under review speaks of a "trait of character of the defendant on trial." The sentence after, although it speaks generally of the credibility "of a character witness testifying on behalf of the defendant," must be limited by the thought expressed later in the sentence that the witness's credibility cannot be impaired by inquiries into criminal conduct of the defendant not evidenced by a conviction. These references further give context to the term "character evidence" used in the sentence under review.
While we have been unable to discern any explanation for the difference in the wording between the initial proposal based upon the original Uniform Rules and our present Evid.R. 47, we find that the absolute right of defendant to introduce character evidence unlimited by Evid.R. 4 considerations, is confined to character evidence relating to the defendant himself. This interpretation is in accord with both the prevalent statutory and common law authority in the country.
The trial judge here excluded the proffered character evidence on the basis of Evid.R. 4 stating:
I think that under R. 4 that this type of testimony in a case of this nature should probably be excluded within the Court's discretion as consuming undue time and confusing the jury as to what the ... [real] issue is here.... I think *451 that's really distracting to the point where it can confuse the jury and distract them from what ... [are] the basic issues in the case.
The judge recognized that under Evid.R. 20 "for the purpose of impairing ... the credibility of a witness, any party ... may examine him and introduce extrinsic evidence relative upon the issue of credibility...." Under Evid.R. 22(c), to affect the credibility of a witness, "evidence of traits of his character other than honesty or veracity or their opposites, shall be inadmissible." Under Evid.R. 47 the character trait of honesty or veracity or their opposites if "offered for the purpose of drawing inferences as to the conduct of a person on a specified occasion may be proved only by: (a) testimony in the form of opinion, (b) evidence of reputation...." These rules have no general exclusion from the discretionary limitation of evidence under the standards of Evid.R. 4. Therefore defendant could have introduced opinion or reputation evidence concerning the victim's mother and aunt only subject to the application of Evid.R. 4. We must therefore examine whether the trial judge's Evid.R. 4 ruling was correct.
The witnesses were already on the stand and they were to be asked solely what the reputation of the mother and aunt were concerning their honesty or veracity. They also could have been asked what their personal opinions were on the subject. The matter of time consumed by these witnesses would have been no more than a few minutes. But the State would then have had the right to present rebuttal witnesses as to the witnesses' reputation for veracity. The time consumed to discover and produce such witnesses might have been substantial, possibly even requiring a continuance of the trial. As the judge also noted, the inquiry might have confused the jury and distracted them from the basic issues in the case.
Since the child herself testified, the evidence the jury heard was not limited to the contemporaneous complaints made by the child to her mother and aunt. In addition, there was some physical evidence of trauma and the victim herself testified both to what happened to her and to what she had told her aunt *452 and mother. Both of the women were subject to full cross-examination. Accordingly, any error in the exclusion of the proffered opinion and reputation evidence was harmless under the facts of this case. R. 2:10-2.

III
Defendant next claims that the fresh complaint rule was abused when the court admitted testimony of complaints made by the victim first to her aunt and then to her mother. Initially, we note that the fresh complaint charge given by the judge followed the Model Jury Charge and the dictates of State v. Balles, 47 N.J. 331, 338 (1966), cert. den. and app. dism. 388 U.S. 461, 87 S.Ct. 2120, 18 L.Ed.2d 1321 (1967).
Had the State offered the child's statements to her aunt under Evid.R. 63(4), the trial judge probably could have made the requisite findings for the statement to have been admitted substantively rather than merely for fresh complaint purposes. If the child was still under the stress of the nervous excitement caused by the affront to her person, even her statements to her mother on the following morning may have qualified for admission under the excited utterance hearsay exception. The time limitations in the rule are somewhat relaxed in the case of child abuse victims. See State v. D.R., 214 N.J. Super. 278, 288-293 (App.Div. 1986), rev'd on other grounds 109 N.J. 348 (1988). And see State in the Interest of C.A., 201 N.J. Super. 28, 33 (App.Div. 1985).
Defendant did not object to the admission of the two statements made by the child first to her aunt and then to her mother. Had such an objection been made, the trial judge may well have considered the issue of whether the statements were admissible as hearsay exceptions rather than merely for fresh complaint purposes. Given the nature of the statements and the distress of the child, we see no basis here to consider the admission of two fresh complaint statements as plain error. In fact the admission of two fresh complaint statements does not *453 appear to be error at all. The same factors as militate for the admission of the first fresh complaint would be present for the second. Without evidence of the second complaint, a jury might have thought that if the child did not recount the events to her mother at the first opportunity, the events may have been a fabrication of either the child or her aunt. See State v. Balles, supra, 47 N.J. at 338; State v. Hintenberger, 41 N.J. Super. 597, 603 (App.Div.), certif. den. 23 N.J. 57 (1956). We find that this point also is meritless, as is defendant's claim that the statements were too detailed.

IV
Defendant lastly complains that his sentence was excessive. Specifically, he asserts that the court mistakenly considered the vulnerability of the victim as an aggravating factor, and that defendant's record could not have required a sentence greater than the presumptive seven years.
The court found four aggravating factors. The seriousness of harm to the victim; the risk defendant would commit another offense; defendant's prior record; and the need to deter both defendant and others. See N.J.S.A. 2C:44-1a(2), (3), (6), and (9). There were no mitigating factors. While the conviction itself required that defendant have "sexual contact with a victim who is less than 13 years old," the statutory element would have been present had the victim been a 12-year old with some sophistication. In this case, however, the victim was defendant's four-year old niece. The extreme youth of the victim was a proper aggravating factor to have been considered by the court. The trial judge specifically stated: "While the element of age is included within this crime, I don't think it completely blankets it, and I think there is some consideration given to the seriousness of harm inflicted on someone of this age." We agree.
Defendant also contends that the judge should not have considered defendant's extensive juvenile record, the offenses running in unbroken succession since defendant was 12 years *454 old, nor the four municipal court convictions which had preceded this event. Although N.J.S.A. 2C:44-1a(6) refers to a defendant's "prior criminal record," N.J.S.A. 2C:44-1a does not limit a sentencing judge to the 13 specific factors which must be considered in each case. State v. Maguire, 84 N.J. 508, 532 (1980). Also, although the language of N.J.S.A. 2C:44-1a(6) speaks of a "prior criminal record," the sentence concludes with the words "and the seriousness of the offenses of which [defendant] has been convicted." (emphasis supplied). N.J.S.A. 2C:1-14k defines the word "offense" as "a crime, a disorderly persons offense or a petty disorderly persons offense unless a particular section in this code is intended to apply to less than all three."
In the context of sentencing, a trial judge must consider the offense that has been committed as the primary factor, State v. Roth, 95 N.J. 334, 367 (1984); but the judge must also consider the defendant. Notwithstanding defendant's youth, his disregard for the rights of others and the norms of society were apparent to the trial judge and are similarly apparent to us. The sentence imposed by the trial judge was within the range established by the Legislature, and we find no abuse of discretion in the imposition of the 10-year sentence.
Affirmed.
NOTES
[1] The common law recognized that a court's discretion in limiting a criminal defendant's witnesses had to be exercised with care. State v. Mucci, 25 N.J. 423, 433 (1957).
[2] Prior to that, the comments to Rule 306 of the 1942 Model Code of Evidence stated that "this Rule accepts the common law insofar as it gives the accused in a criminal case the unqualified right to introduce evidence of a relevant trait of his character...."
[3] As noted earlier, the sentence of the 1965 rule reads:

Character evidence offered by the defendant may not be excluded under Rule 4.