**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2826-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SAINT H. MERILAN a/k/a,
SAINT HILAIRE MERILAN,
SAINT H. MERIALN, SAINT
MERILAN, JASON WILLIAMS,

    Defendant-Appellant.

_____

        Submitted February 9, 2017 - Decided  April 24, 2017

        Before Judges Lihotz and Whipple.

        On appeal from Superior Court of New Jersey,
        Law Division, Union County, Indictment No. 12-
        12-0913.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Daniel S. Rockoff, Assistant
        Deputy Public Defender, of counsel and on the
        brief).

        Grace H. Park, Acting Union County Prosecutor,
        attorney for respondent (Meredith L. Balo,
        Special Deputy Attorney General/Acting
        Assistant Prosecutor, on the brief).

PER CURIAM

Tried by a jury, defendant Saint H. Merilan was convicted of second-degree reckless manslaughter, N.J.S.A. 2C:11-4b(1), as a lesser included offense to the charged offense of aggravated manslaughter (count one); third-degree possession of a knife for an unlawful purpose (count two), N.J.S.A. 2C:39-4D; and fourth-degree unlawful possession of a knife (count three), N.J.S.A. 2C:39-5D. Defendant was acquitted of aggravated assault (count four). Following merger, the trial judge imposed a nine-year sentence, subject to the eighty-five percent parole ineligibility period imposed by the No Early Release Act, N.J.S.A. 2C:43-7.2, and three years of parole supervision upon release.

Defendant appeals from the October 30, 2014 judgment of conviction and imposed sentence. Following review of the arguments in light of the record and applicable law, we affirm.

I.

The State presented the following evidence at trial. Defendant, having spent the day with his daughter, waited for Janet,[1] the child's mother, to return home from work. As the child and defendant sat in his car, Janet, her infant son, her partner, and his sister pulled up and parked facing defendant's car, parked in front of her apartment. The partner approached defendant's car

---

[1] We have used pseudonyms for the witnesses to protect their privacy.

and made a comment to defendant that angered him; defendant exited his vehicle. Janet did not see how the fight started, but observed the two men fighting, with her partner "towering" over defendant. Janet related her unsuccessful attempts to separate the men, by swinging a black "stick-shaped" object she grabbed from a nearby trashcan. During these attempts, she struck both defendant and her partner.

While Janet continued efforts to separate the men, she realized she was stabbed. She then saw her partner collapse and observed defendant holding a knife, which he dropped. Janet realized her partner had been repeatedly stabbed and grabbed the knife. She ran clutching the knife and defendant chased her. Defendant trapped Janet against another parked vehicle, yelling, "let go of the knife." Defendant tried to wrench the knife from Janet's hand. In the process, Janet's finger was cut, but she would not release the knife.

Janet's partner's sister, who remained in Janet's car also testified. She maintained defendant was the aggressor, she saw a knife in defendant's hand, saw blood on her brother's shirt and ran from the scene in fear. She also identified the object in Janet's hand as "a little piece of wood."

Defendant's daughter testified. She recalled the events occurring two years earlier, when she was seven. She explained

Janet's partner slowly approached defendant's car holding a "black stick" and banged on her father's car window. She replied "no" when asked if Janet's partner punched her father in the face and said she did not remember telling police Janet's partner punched her father. On cross-examination, the child reviewed her statement, given to police on the day of the altercation. The statement recorded: "when my mom got home her boyfriend got out of the car with a stick and then he hit my dad." When asked whether the child told this to the detective conducting the interview after the fight, the child said, "well, I don't remember. That's why I said I didn't see it." After additional questions regarding the statement, the child testified: "that's what it said on the paper, but . . . I didn't remember that - - that I said that."

Cross-examination continued and the child was asked whether Janet's partner "was the first person who threw the punch at your father," to which the child replied "I don't remember having told you that." The child agreed, however, when Janet's partner threw his first punch, defendant was seated in his car and then exited. Redirect elicited this testimony:

> [WITNESS]: I remember that [Janet's partner]
> got out of the car, he went to my dad's car
> and he banged on the window. And then he --
> when -- my dad put the window down he asked
> him a question.

[PROSECUTOR]: Okay. And did he hit your dad? Did you see your dad hit him or him hit your dad while your dad was still in the car? Do you remember any of that?

. . . .

A: No.

Q: And what do you remember seeing after you saw [Janet's partner] banged on your dad's window?

A: He — my dad put down the window, he asked him — a que —

Q: Okay don't say what they said.

A: He asked him a question. And then — and then my dad got mad, so he got out of the car and then that's when they started fighting.

After Janet's partner lay on the ground, the child approached her parents. Defendant instructed her to get in his car and he drove to the Elizabeth police station, where he was questioned and detained.

Janet cradled her partner's head, attempted to stop the bleeding, and called 9-1-1. Police responded to the apartment, where they found Janet and her unresponsive partner.

Detectives collected the knife, blood stained clothing and a black metal rod. At the station, police photographed defendant's body and observed cuts on his arms and hands, which did not appear serious.

The county medical examiner reported Janet's partner had five stab wounds: two on the left side of his chest, one to the back of his head, one on the left side of his back, and one to the chest that pierced his heart. She described the length and size of each wound, noting the last was the only fatal wound.

Defendant took the stand in his defense. He testified he was in his car waiting for Janet when a man approached the vehicle and punched him in the face, through the open window. Defendant was in shock and grabbed his pocketknife, intending to scare the man. When he exited his car, he was assaulted by Janet, who struck him in the back of the head "with a tire iron," as well as her partner, who repeatedly punched him. Janet and her partner cornered defendant against his car: one in front of him and one behind; two other men flanked also him on each side. Defendant explained he needed to defend himself. While he was being struck by members of the group, he opened his knife and just started swinging, making a stabbing motion. The fight suddenly stopped, as Janet's partner fell to the ground, and the two unidentified men "ran off." Defendant dropped the knife, which Janet picked up and began swinging toward him. He grabbed his daughter and drove directly to the police station, where he gave a statement.

The jury did not find defendant guilty of first-degree aggravated manslaughter or aggravated assault. Rather, it

convicted defendant of the lesser-included offense of second-degree reckless manslaughter and the weapons charges.

## II.

On appeal defendant argues:

POINT I.
[DEFENDANT]'S SELF-DEFENSE CLAIM WAS UNFAIRLY CIRCUMSCRIBED AT TRIAL. (Partially Raised Below).

(A) THE COURT TOLD THE JURY THAT THE SOLE EYEWITNESS STATEMENT CONFIRMING [DEFENDANT]'S ACCOUNT OF BEING ATTACKED WAS NOT CREDIBLE.

(B) THE PROSECUTOR ELICITED INADMISSIBLE N.J.R.E. 404(B) HEARSAY SUGGESTING DEFENDANT HAD A HISTORY OF STARTING FIGHTS.

(C) THE JURY CHARGE ON RECKLESS MANSLAUGHTER CONTRADICTED THE REQUIREMENT THAT THE STATE DISPROVE SELF-DEFENSE BEYOND A REASONABLE DOUBT.

(D) CONCLUSION: BECAUSE THESE THREE ERRORS INDIVIDUALLY AND CUMULATIVELY PREJUDICED MERILAN'S SELF-DEFENSE CLAIM, A NEW TRIAL IS REQUIRED.

POINT II.
BECAUSE THE COURT IMPOSED A SENTENCE AT THE HIGH END OF THE SECOND-DEGREE RANGE ONLY AFTER (A) FINDING IMPROPER AGGRAVATING ACTORS, AND (B) FAILING TO FIND CRITICAL MITIGATING FACTORS, A REMAND FOR RESENTENCING IS REQUIRED.

(A) THE COURT INAPPROPRIATELY RELIED ON AGGRAVATING FACTORS (1), (2), (3), AND (9) TO JUSTIFY IMPOSITION OF A NERA SENTENCE AT THE HIGH END OF THE SECOND-DEGREE RANGE.

(i) The Court Erred by Finding Aggravating Factor (1).

(ii) The Court Erred by Finding Aggravating Factor (2).

(iii) The Court Erred by Finding Aggravating Factor (3).

(iv) Aggravating Factor (9) Warranted Minimal Weight Only.

(B) THE COURT IMPOSED A NERA SENTENCE AT THE HIGH END OF THE SECOND-DEGREE RANGE ONLY AFTER FAILING TO FIND MITIGATING FACTORS (2), (3), (4), (8), (9), AND (12).

(i) Because [Defendant] was a First-Time Offender Responding to an Unprovoked Attack, the Court Erred by not Finding Mitigating Factors (2), (3), and (4).

(ii) Because [Defendant] was a First-Time Offender who Expressed Remorse After Responding to an Unprovoked Attack, the Court Erred by not Finding Mitigating Factors (8) and (9).

(iii) Because [Defendant] Distinguished Himself from other Defendants by Immediately Driving to the Police Station, Turning Himself in, and giving a Statement to the Police, the Court Erred by Failing to Find Mitigating Factor (12).

(C) CONCLUSION: BECAUSE THE SENTENCING COURT ERRED IN ASSESSING BOTH AGGRAVATING AND MITIGATING FACTORS, THIS COURT MUST REMAND FOR RESENTENCING.

We consider these arguments.

A.

First, defendant identifies three errors, which he maintains "unfairly circumscribed" his assertion of self-defense and deprived him of a fair trial. Arguing Janet's partner initiated an unprovoked assault and Janet joined in the attack, he contends he was justified in defending himself with a pocketknife. Defendant believes evidence showing he was protecting himself against an unprovoked attack "was thus the lynchpin of his defense," requiring acquittal.

Defendant argues the first error was the judge's comment during jury instruction regarding the child's statement to police. Defendant states the judge's comment erroneously "cast doubt on the <u>sole</u> eyewitness statement confirming [defendant]'s testimony" he was the victim of an unprovoked attack.

Discussing the witness's testimony, the judge remarked:

> In regard to the testimony of [defendant's child], on cross-examination inconsistencies were shown between prior statements and those given on the stand. The witness gave reasons therefore, saying that such prior statements or omissions were inaccurate. Among the reasons given that I recall was poor recollection at the time.
>
> The extent to which such inconsistencies or omissions reflect the truth is for you to determine. Consider their materiality and relationship to her entire testimony and all

9

the evidence in the case, when, where, and the circumstances under which they were said or omitted and whether the reasons she gave you therefore appear to be to you believable and logical.

Other instructions explained the jury may consider the earlier statements "as proof of the fact," to which the statement applied.

"Clear and correct jury charges are essential for a fair trial." State v. Cook, 300 N.J. Super. 476, 488 (App. Div. 1996) (citation omitted). "[T]he failure of a trial court to properly charge a jury is grounds for reversal, even though defense counsel failed to object at the appropriate time." State v. Harrington, 310 N.J. Super. 272, 277 (App. Div. 1998). "So critical is the need for accuracy that erroneous instructions on material points are presumed to be reversible error." Ibid. (quoting State v. Martin, 119 N.J. 2, 15 (1990)).

Defendant did not raise an objection to the jury instructions at trial. Therefore, we consider whether the judge's comment rose to plain error. R. 2:10-2. More specifically, whether the challenged instruction is "of such a nature as to have been clearly capable of producing an unjust result." State v. Garrison, __ N.J. __ (2017) (slip op. at 6) (quoting R. 2:10-2). "For an error to require reversal, there must be 'some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether

[it] led the jury to a verdict that it otherwise might not have reached.'" State v. Galicia, 210 N.J. 364, 388 (2012) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

Importantly, in our review, we must consider the jury charge as a whole, and examine it in its entirety. State v. Delibero, 149 N.J. 90, 106-07 (1997). Further, the charge provisions, including the alleged error, should be assessed "in the context of the evidence." State v. Robinson, 165 N.J. 32, 47 (2000).

The judge's comment suggesting the reason for the inconsistent statements by defendant's child resulted from "poor recollection," was accurate, as the defendant's child stated at trial she could not remember if she told police Janet's partner threw the first punch or who started the fight. She also acknowledged her prior statement to police relating these events.

For purposes of our opinion, we will assume the judge's statement is ambiguous because it might suggest the judge recalled the child believed her police statement was the result of "poor recollection at the time." Following our review of the arguments in light of the record, we conclude the comment did not deprive defendant of a fair trial, when considered in the context of the total instruction given to the jury.

Importantly, the judge repeatedly informed the jury its recollection of the evidence controlled and it was the sole factfinder, stating:

> You and you alone are the sole and exclusive judges of the evidence, of the credibility of the various witnesses, and the weight to be attached to the testimony of each witness.
>
> Regardless of what counsel said or I may have said recalling the evidence in this case, it is your recollection of the evidence that should guide you as judges of the facts. Arguments, statements, remarks, openings, and summations of counsel are not evidence and must not be treated as evidence.
>
> Although the attorneys may point out what they think important in this case, you must rely solely upon your understanding and recollection of the evidence that was admitted during the trial.

Moreover, the now challenged comment did not misconstrue a legal instruction; rather, it was designed to provide an illustration of inconsistencies between two witness statements. In the same charge on the same subject, the judge also included a much clearer example and told the jurors to consider all evidence and discern whether the prior statement was correct or whether the different trial statement was correct.

Finally, the child's testimony was read back to the jury at its request, making her statements fresh in each juror's mind when

A-2826-14T4

deliberations resumed. In this light, we reject defendant's argument of plain error warranting reversal.

Defendant also contends the judge erred in denying a mistrial after the child responded to a question by noting Janet's partner asked defendant why he had punched him. We reject this argument as lacking merit. R. 2:11-3(e)(2).

Upon defendant's objection, the judge struck the statement and issued a swift, clear, strong instruction for the jury, see State v. Vallejo, 198 N.J. 122, 134-35 (2009), ordering jurors to disregard the witness's inadvertent response to the prosecutor's inartful question and firmly told the jury not consider it in deliberations, "in any manner, size, shape, or form during the course of this trial." We find no abuse of discretion in denying the resultant motion for mistrial. "[W]e trust juries to follow instructions." State v. Short, 131 N.J. 47, 65 (1993); see also State v. Winter, 96 N.J. 640, 649 (1984) (holding that jury is capable of following a curative instruction to ignore prejudicial matter). We have no reason to conclude the jury did not do so in this case.

Finally, defendant argues the self-defense instructions

> misleadingly suggested that the State did not
> need to disprove self-defense beyond a
> reasonable doubt in order for the jury to
> convict [defendant] . . . . These
> instructions were misleading because they

13

suggested the State only had to prove [defendant] violated the elements found in the specific criminal statutes . . . . But the State also had to prove beyond a reasonable doubt the absence of the justification defense . . . .

The judge tailored his charge, guided by the Model Jury Charges on reckless manslaughter and self-defense. Defendant agreed the charge was appropriate and raised no objection at trial. We disagree with the suggestion that the charge as issued was erroneous or confusing, and reject defendant's claim of plain error. We also reject as lacking merit defendant's claim of cumulative error. R. 2-11:3(e)(2).

B.

Defendant raises several arguments challenging the imposed sentence of nine years. We review sentencing decisions for an abuse of discretion. State v. Blackmon, 202 N.J. 283, 297 (2010).

> Appellate courts review sentencing determinations in accordance with a deferential standard. The reviewing court must not substitute its judgment for that of the sentencing court. State v. O'Donnell, 117 N.J. 210, 215 (1989). The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984).

[State v. Fuentes, 217 N.J. 57, 70 (2014).]

When the trial judge properly identifies and balances the aggravating and mitigating factors, which are supported by sufficient credible evidence in the record, we will affirm the sentence. State v. Cassady, 198 N.J. 165, 180-81 (2009).

Here, the judge found aggravating factors one (the act was committed in a heinous, cruel, or depraved manner), two (the gravity and seriousness of harm inflicted on the victim, including whether defendant knew or reasonably should have known the victim was particularly vulnerable or incapable of resistance), three (risk defendant will re-offend), and nine (need for deterrence). N.J.S.A. 2C:44-1(a)(1), (2), (3), (9). The judge also applied mitigating factors five (the victim induced or facilitated defendant's conduct) and seven (defendant has no history of prior delinquency or criminal activity). N.J.S.A. 2C:44-1(b)(5), (7).

Defendant argues the imposed sentence was excessive because the trial judge: (a) improperly applied aggravating factors one, two, and three; (b) failed to apply applicable mitigating factors two (defendant did not contemplate his conduct would cause serious harm), nine (defendant's character and attitude show it is unlikely he will commit another offense), and twelve (defendant cooperated with law enforcement), see N.J.S.A. 2C:44-1(b)(2), (9), (12),

although requested by defendant; and (c) did not consider application of mitigating factors three (defendant acted under strong provocation), four (substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense) and eight (defendant's conduct was the result of circumstances unlikely to recur). See N.J.S.A. 2C:44-1(b)(3), (4), (8). We consider each of these arguments.

1.

Defendant argues aggravating factor one was not applicable. The judge applied the factor because defendant chose to engage Janet's partner, instead of driving away. Defendant asserts this conduct goes to recklessness; therefore, the judge's finding double counted an element of the offense. We disagree.

In Fuentes, the Supreme Court recently discussed this exact issue, stating:

> When applying this factor, "the sentencing court reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (quoting [State v. ]Hodge, 95 N.J. [369,] 379 [(1984)]). As the Court has held, "[t]he paramount reason we focus on the severity of the crime is to assure the protection of the public and the deterrence of others. The higher the degree of the crime, the greater the public need for protection and

the more need for deterrence." State v. Megargel, 143 N.J. 484, 500 (1996).

When it assesses whether a defendant's conduct was especially "heinous, cruel, or depraved," a sentencing court must scrupulously avoid "double-counting" facts that establish the elements of the relevant offense. See State v. Yarbough, 100 N.J. 627, 645 (1985); [State v. ]Kromphold, 162 N.J. [345,] 352 [(2000)]. As this Court observed:

> [In Yarbough], we recognized that facts that established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence. We reasoned that the Legislature had already considered the elements of an offense in the gradation of a crime. If we held otherwise, every offense arguably would implicate aggravating factors merely by its commission, thereby eroding the basis for the gradation of offenses and the distinction between elements and aggravating circumstances. In the same manner, double-counting of elements of the offenses as aggravating factors would be likely to interfere with the Code's dedication to uniformity in sentencing.
>
> [Kromphold, supra, 162 N.J. at 353 (internal citation omitted).]

In appropriate cases, a sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense. See [State v.] O'Donnell, 117 N.J. [210,] 217 [(1989)]. In O'Donnell, supra, the Court held that "cruel"

17

conduct may give rise to an aggravating factor in a manslaughter sentencing when the defendant intended "'to inflict pain, harm and suffering — in addition to intending death.'" Id. at 217-18 (quoting State v. Ramseur, 106 N.J. 123, 208 (1987)); see also State v. Soto, 340 N.J. Super. 47, 54-55, 71-72 (App. Div.), certif. denied, 170 N.J. 209 (2001) (affirming application of aggravating factor one when trial court noted protracted suffering inflicted and brutal killing of victim); State v. Mara, 253 N.J. Super. 204, 214 (App. Div. 1992) (affirming sentencing court's finding that aggravating factor one applied when, in aggravated assault case, "the serious injuries were far in excess of that required to satisfy" statutory elements). A sentencing court may consider "aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior." State v. Henry, 418 N.J. Super. 481, 493 (Law Div. 2010) (citing State v. Taylor, 226 N.J. Super. 441, 453 (App. Div. 1988)).

[Fuentes, supra, 217 N.J. at 74-75.]

Here, the judge's comment, suggesting defendant could have driven away but instead exited his vehicle secreting a knife, reflects the manner in which defendant acted and the cruel nature of the killing. We do not agree the trial judge abused his discretion in applying this factor. See State v. Bowens, 108 N.J. 622, 639 (1987) (focusing on the "brutal, senseless nature of [a] stabbing"). We also note the judge lessened the weight of this factor, finding it was "offset" by mitigating factor five, noting the victim initiated the altercation.

In applying aggravating factor two, the judge recognized the seriousness of the harm that resulted from defendant's actions. He found defendant escalated a fistfight by employing a knife. Thus, the victim was vulnerable because he "was in no [way] prepared to stave off a knife fight, so obviously when a knife is brought to a dispute there is some vulnerability for the victim." Defendant's claim of double-counting characterizing this finding as representing the "use of deadly force" is rejected.

"[Aggravating factor two] compels 'a pragmatic assessment of the totality of harm inflicted by the offender on the victim.'" State v. Anthony, 443 N.J. Super. 553, 575-76 (App. Div. 2016) (quoting Lawless, supra, 214 N.J. at 610.) "It focuses on the setting of the offense itself with particular attention to any factors that rendered the victim vulnerable or incapable of resistance at the time of the crime." Ibid. (quoting Lawless, supra, 214 N.J. at 611). In State v. Faucette, 439 N.J. Super. 241 (App. Div. 2015), we affirmed the application of aggravating factor two when the defendant was aware his co-defendant was armed with a gun as he went to rob an unsuspecting gas station attendant, reciting the trial judge's stated findings: "The victim was just plain vulnerable and had no chance whatsoever. . . ." Id. at 272.

In our view, the judge's findings reflect those facts identified in Faucette. As the trial judge stated, defendant used

a knife in a fistfight, making the unsuspecting victim vulnerable. Additionally, the judge did not accord heavy weight to this finding.

Next, applying aggravating factor three, the judge cited defendant's prior alcohol use, lack of stable employment, and conduct, including commission of domestic violence and a municipal court offense, represented a deviation from the standards of society, from which he concluded defendant was likely to engage in future criminal conduct. However, defendant argues this was his first criminal offense and the evidence cited was insufficient to support the finding he will reoffend.

Defendant's contention that aggravating factor three cannot coexist with mitigating factor seven, is not correct. See State v. Case, 220 N.J. 49, 67 (2014) ([W]e do not presume that aggravating factor three cannot coexist with mitigating factor seven . . . ."); State v. Varona, 242 N.J. Super. 474, 491 (App. Div.), certif. denied, 122 N.J. 386 (1990) (finding aggravating factor three despite lack of prior record). The issue is whether the cited factual findings are grounded in competent, credible evidence in the record. See Roth, supra, 95 N.J. at 363.

We reject the generalities of social alcohol use, cited by the judge, as support for the likelihood of re-offense. Also, the pre-sentence report identifies defendant was employed at the time

this offense occurred and the judge did not explain why he found defendant's employment was unstable.

That said, the judge did mention three other facts bearing on application of aggravating factor three. First, he noted defendant had been involved in domestic violence matters. Documents show final restraining orders were granted against defendant for assault in January 2007 and again in March 2007. Further, matters tried in municipal court included charges for disturbing the peace and shoplifting in 2006 and downgraded charges of resisting arrest to improper behavior in 2009, both of which resulted in suspended jail sentences. The judge stated defendant was not deterred by these interactions with the justice system and diversionary programs. He also found defendant's conduct, although not criminal, showed a "deviation or . . . violation of the standard mores of society" tending to suggest he will reoffend. Finally, when discussing deterrence, the judge mentioned defendant's lack of appreciation for the gravity of his conduct and his insistence the killing was justified. This finding also bears on likelihood of re-offense. In sum, adequate evidence supporting application of aggravating factor three was presented.

Defendant's suggestion the judge erred because application of aggravating factor nine (deterrence) deserved little weight is rejected. See R. 2:11-3(e)(2). The findings regarding specific

21

and general deterrence were adequately stated and will not be disturbed.

We turn to the trial judge's rejection of requested application of mitigating factors. Defendant correctly asserts mitigating factors that are called to the court's attention should not be ignored, Blackmon, supra, 202 N.J. at 297, "and when 'amply based in the record . . . they must be found.'" Case, supra, 220 N.J. 49, 64 (quoting State v. Dalziel, 182 N.J. 494, 504 (2005)). During the deliberative process, a judge, must state the basis for rejecting a claimed mitigating factor. Ibid.

The judge fully rejected application of mitigating factor two, noting defendant could not arm himself with a deadly weapon and believe serious harm would not result. We conclude defendant's arguments to the contrary are specious.

We also conclude the judge's reliance on defendant's past conduct, including domestic violence, shoplifting, and a downgraded resisting arrest offense, was insufficient to deter him from engaging in future criminal conduct. These facts reflect supporting the rejection of mitigating factor nine.

Defendant also argues the judge erroneously denied application of mitigating factor twelve. Defendant urges he cooperated with police by driving to the stationhouse immediately after the stabbing and voluntarily gave a statement. In rejecting

22

application of this factor, the judge found defendant's motives were not to cooperate, but to give his version of the incident, asserting he was a victim of an unprovoked attack, before police spoke to Janet, who he knew had called 9-1-1. The judge also noted defendant falsely told police there were two other men involved with the assault, in an attempt to justify his fear for his life. In this light, we do not agree the judge abused his discretion in denying application of factor twelve.

For the first time on appeal, defendant asserts the judge should have applied mitigating factor three, defendant acted under strong provocation. We disagree. The facts show defendant was confronted by Janet's partner, who along with Janet, struck him in the course of the altercation. Defendant's testimony asserting his life was threatened requiring he act in self-defense was rejected by the jury and belied by the evidence, including the testimony of the arresting officer along with photographic evidence showing defendant suffered mere minor injuries. Further, no support existed for defendant's claim two additional attackers were involved, but fled.

We reject as unfounded defendant's claim to apply mitigating factor four, suggesting substantial grounds existed tending to excuse or justify defendant's conduct, though failing to establish a defense. The State appropriately refuted this request stating,

"a strike to the face does not justify a stab to the heart." Moreover, the claim of self-defense was rejected by the jury, such that the killing was not found justified. See State v. Kelly, 97 N.J. 178, 204 n.12 (1984) ("[S]elf-defense based on a reasonable belief in the need for deadly force would constitute justification — a complete defense — to the charge of reckless manslaughter."); State v. Hines, 303 N.J. Super. 311, 323 (App. Div. 1997) ("Self-defense is a complete defense not only to murder but also to manslaughter . . . .").

Defendant further maintains for the first time, his conduct was the result of circumstances unlikely to recur, warranting application of mitigating factor eight. He argues the facts surrounding the assault, including attacks by Janet and her partner, were unusual, and therefore, unlikely to reoccur. We are unpersuaded. The trial judge noted defendant's prior domestic violence and municipal court charges involved altercations, which we note are reflective of an inability to walk away from such physical encounters, when challenged.

The judge properly applied and balanced applicable aggravating and mitigating factors. The term imposed fell within the range applicable to defendant's conviction. Consequently, we determine there is no basis to interfere with this sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24

A-2826-14T4