**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3029-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LASHAUN SMITH, a/k/a
LASHAWN L. SMITH,
SHAUN L. SMITH, and
SHAUN LEWIS,

     Defendant-Appellant.

_____

Submitted October 7, 2020 – Decided October 28, 2020

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-12-2481.

Joseph E. Krakora, Public Defender, attorney for appellant (Joshua D. Sanders, Assistant Deputy Public Defender, of counsel and on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Melinda A. Harrigan, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Lashaun Smith appeals the trial court's denial of his motion to suppress a confession and the court's imposition of sentence without discussion of his mental health history. For the reasons that follow, we affirm the conviction but remand for resentence.

Defendant bludgeoned the victim to death while she slept. The couple shared a home, and their four children were asleep in adjoining bedrooms when the murder occurred.

Defendant called 911 at approximately 5:00 a.m., and said he needed police to respond to the home because someone was bleeding.[1] When asked to identify who was bleeding, he responded it was the mother of his children and himself and that he had caused both to bleed. Defendant also told the dispatcher he was waiting outside because he did not want the children to be involved.

Atlantic County Prosecutor's Office Sergeant William Hess testified at the Miranda[2] hearing that he was notified that morning that defendant was in custody for killing his girlfriend. Hess arrived at the Egg Harbor police station

---

[1] Our description of defendant's statements is taken from the testimony of the lead investigating officer, as no actual transcript of the recording is included in the record.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

at approximately 7:00 a.m. and was escorted to the holding area, where defendant lay on his side on a bench in his cell, apparently sleeping.

The officers told Hess they were concerned defendant was still bleeding from self-inflicted wounds on his wrists and that Emergency Medical Services (EMS) personnel had been requested to reevaluate his injuries. Hess asked defendant if he had additional injuries that needed to be examined, which defendant denied.

After medical personnel conducted a second assessment, Hess introduced himself to defendant, who was still lying with his back to the door. Defendant did not reply. Hess spoke to defendant over the next half hour, asking him once if he wanted water, and another time if he would talk to him about the 911 call. Defendant did not respond. Hess attributed defendant's silence to physical exhaustion. By 7:30 a.m., Hess decided to have defendant transported to the Atlantic City Medical Center (ACMC) for evaluation. He explained his concern to defendant, who sat up as medical personnel approached to place him on a gurney.

Before defendant left, Hess asked him if family members could take custody of the children. Defendant answered that the children would either be with him or "her," an apparent reference to the victim.

Some eight or nine hours later, once psychologically and medically cleared by ACMC, defendant was driven to the Prosecutor's Office. Defendant was asked if he was hungry, and food was obtained for him. At 4:02 p.m., Hess spoke with defendant and repeated that he wanted to talk about the 911 call. Defendant replied that he would do so, but wanted to eat first. He was left alone in the interview room until some fifteen minutes after being provided with a meal. At that juncture, Hess entered the room and read defendant, who seemed sober, sad, and remorseful, his Miranda rights. Defendant waived his rights, signed the Miranda card memorializing the waiver, and was interviewed. During the suppression hearing, the State played the video of the interview, including the administration of Miranda rights to defendant.

The Law Division judge issued a thorough, comprehensive, and cogent opinion denying defendant's application. He concluded the State had met its burden of proving beyond a reasonable doubt that defendant had made a knowing, voluntary, and intelligent waiver of his Miranda rights. The judge observed that the interview was a "'text-book' example of how to treat a criminal suspect in an interrogation." Thus, he denied defendant's motion.

Defendant entered an open-ended, or non-negotiated, guilty plea. See R. 3:9-3(c) (with the consent of counsel, where no tentative agreement has been

4

reached, a court may indicate the maximum it would impose by way of sentence in the event a defendant pleads guilty, assuming the information in the presentence report corroborates representations made to the judge, and supports a judge's conclusion "that the interests of justice would be served thereby"). Based on the information provided to the judge, he indicated that he would impose a forty-year sentence of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on defendant's guilty plea to first-degree murder, N.J.S.A. 2C:11-3(a)(1). By statute, defendant was exposed, if convicted at trial, to life imprisonment. See N.J.S.A. 2C:11-3(b).

Defendant, then thirty-eight, had seven arrests, a prior indictable conviction, and three disorderly persons and petty disorderly persons offenses, as well as a prior domestic violence history. When sentencing defendant on February 22, 2019, the court found aggravating factors three, six, and nine, N.J.S.A. 2C:44-1(a)(3), (6), and (9), and no factors in mitigation.

On appeal, defendant raises these claims of error:

> POINT I
> THE TRIAL COURT ERRED IN FAILING TO SUPPRESS [DEFENDANT'S] STATEMENT TO POLICE WHEN LAW ENFORCEMENT FAILED TO SCRUPULOUSLY HONOR [DEFENDANT'S] INVOCATION OF HIS RIGHT TO SILENCE. U.S. CONST. AMENDS. V, XIV; N.J. CONST. ART. I, PARAS. 9, 10.

A-3029-18T4

POINT II
THE 40-YEAR TERM SENTENCE SUBJECT TO PAROLE INELIGIBILITY OF 85 PERCENT IS EXCESSIVE AND THE MATTER MUST BE REMANDED FOR RESENTENCING DUE TO THE COURT'S FAILURE TO CONSIDER [DEFENDANT'S] MENTAL HEALTH ISSUES IN MITIGATION.

I.

The Fifth Amendment of the United States Constitution provides that "no person should be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda, the United States Supreme Court held that this right applies in all custodial interrogations. 384 U.S. at 467-68. The subject of a custodial interrogation must be clearly and unequivocally informed of their right to remain silent and to have an attorney present during the interrogation. Id. at 467-68, 470. Defendant claims his silence while in the holding cell was an invocation of his right to remain silent.

Any evidence obtained in violation of Miranda must be suppressed at trial. State v. Hartley, 103 N.J. 252, 262 (1986). New Jersey's application of Miranda stems from our common law and is "treated . . . as though it were of constitutional magnitude, finding that it offers broader protection than its Fifth Amendment federal counterpart." State v. O'Neill, 193 N.J. 148, 176-77 (2007).

A-3029-18T4

If the suspect consents to proceed with the interrogation, the rights must be "knowingly and intelligently waived[.]" Miranda, 384 N.J. at 475; Hartley, 103 N.J. at 261. The State must prove the waiver was valid beyond a reasonable doubt. State v. Burris, 145 N.J. 509, 534 (1996). If the suspect invokes the right to remain silent, that invocation must be "scrupulously honored." Hartley, 103 N.J. at 255-56 (citing Michigan v. Mosley, 423 U.S. 96 (1975)). If the invocation is ambiguous, the officer may only ask clarifying questions about whether he or she meant to invoke the right to remain silent. State v. Johnson, 120 N.J. 263, 283 (1990). Clarifying questions are not considered interrogation because there is no intent to elicit an incriminating response. Ibid.

Whether a defendant invoked the right to remain silent will be determined under the totality of the circumstances. State v. Maltese, 222 N.J. 525, 545 (2015). An ambiguous invocation can arise where a subject refuses to respond to questioning for a prolonged period and has made statements that "convey[] an unwillingness to respond to any questions." Johnson, 120 N.J. at 285. In Johnson, for example, the Court held that when the defendant replied "I can't talk about it" to officer inquiries, the officer had a duty to cease questioning or seek clarification as to whether this was an invocation of the right to remain silent. Id. at 284. Instead, the officer questioned the defendant for over an hour,

through which defendant stayed silent. Ibid. Looking at the totality of the circumstances, continued questioning violated the defendant's rights. Ibid.

In State v. Bey, however, the Court held that defendant's request for a break to "lay down and think about it" could not be reasonably construed as an invocation of his Fifth Amendment rights. 112 N.J. 123, 138-39 (1988). In order to be an ambiguous invocation, a statement or conduct must "reasonably appear to be inconsistent with defendant's willingness discuss his case with the police." Id. at 136.

Where the totality of the circumstances indicates that defendant exercised his right to remain silent, ambiguously or unambiguously, and the authorities again ask if he is interested in being interviewed, the Hartley bright line rule requires Miranda warnings to be readministered. This is because "the failure [to] scrupulously . . . honor an accused's previously-asserted right to silence amounts to a constitutional violation and a violation of the state common-law privilege against self-incrimination, and any inculpatory statement made in the absence of fresh warnings must be deemed to have been unconstitutionally and illegally obtained as a matter of law." Hartley, 103 N.J. at 271. In other words, Hartley required police to reissue Miranda warnings after the cessation of questioning.

A-3029-18T4

An ambiguous invocation of the right to remain silent must be clarified before authorities can proceed to question a suspect. State v. S.S., 229 N.J. 360, 384, 386 (2017). When by prolonged silence a defendant expresses his intent to exercise his right to remain silent, not to speak with the authorities, officers must ascertain whether the defendant by his conduct wants the interrogation to cease. Johnson, 120 N.J. at 285. As the Court was careful to acknowledge, however, interrogation "often encounters silence, denial, and evasive responses." Ibid. It is

> only . . . when a suspect's silence and refusal to answer continues, as here, for a prolonged period and is characterized by statements conveying an unwillingness to respond to any questions, then interrogation must cease and the police must affirmatively ascertain whether defendant's refusal to answer constitutes an assertion of the right to discontinue the interrogation.

> [Ibid.]

Turning to the facts in this case, when Hess initially spoke to defendant, and obtained few responses, he did not explain his Miranda rights to the suspect. Questioning could not have lawfully occurred in the cell in the absence of

recording equipment.[3] Had defendant expressed an interest in speaking to Hess, the officer was obligated to take defendant to an interview room equipped with a video camera, and administer Miranda warnings on the record. Hess spoke to defendant while he lay in a holding cell in a police station that presumably had working recording equipment, yet made no effort to move him out of the cell except for medical clearance.

Defendant's citation to State v. Maltese as supporting his argument that defendant's initial silence was an invocation of his right to remain silent is inapposite. In that case, the Court considered an equivocal invocation of the right to remain silent—but after a defendant was administered Miranda warnings. State v. Maltese, 222 N.J. 525, 539 (2015). Here, eight or nine hours elapsed between Hess's brief exchange with defendant in the holding cell, during which time defendant was being medically evaluated, and the interview in the Prosecutor's Office. It was not until after defendant's medical and psychiatric clearance that he was administered his Miranda rights, and waived them. Defendant does not even challenge the judge's decision based on events after that point.

---

[3] See R. 3:17. See also Attorney General Directive #2006-4, "Superseding Directive Regarding Electronic Recordation of Stationhouse Interrogations" (Oct. 10, 2006).

The line of demarcation is clear. When defendant said nothing, he was not pressed, but sent to a hospital for medical and psychiatric screening. Hours later, after the evaluation, he indicated a willingness to talk to law enforcement. Only then did the officers obtain his waiver of his <u>Miranda</u> rights and interrogate him.

The issue we are considering was not made, from what we can discern from the record, before the judge who decided the motion. Certainly, it was not mentioned by the judge in his otherwise thorough decision, and no copies of the motion briefs were included in the appendix, presumably because they would not have affected this argument. <u>See</u> <u>R.</u> 2:6-1(b). We therefore consider it under a plain error standard of review. <u>R.</u> 2:10-2. The court will affirm unless the error was "clearly capable of producing an unjust result." <u>State v. Robinson</u>, 200 N.J. 1, 20 (2009) (quoting <u>R.</u> 2:10-2).

We conclude that defendant did not, by his unresponsiveness while in the holding cell, ambiguously invoke his right to remain silent. Even if we were to construe it in that manner, defendant's confession was obtained many hours later after his rights were explained for the first time. Defendant's waiver was, beyond a reasonable doubt, made knowingly, intelligently, and voluntarily.

During the sentencing hearing, no one mentioned defendant's mental health status. Although he had been diagnosed with a major depressive disorder in September, six months before the sentence hearing, the condition was not raised by counsel, the prosecutor, or the judge. The judge was aware, having conducted the <u>Miranda</u> hearing, that defendant, after killing the victim, attempted to kill himself.[4] It is reasonable to assume the judge read the presentence report, however, which included defendant's description of his attempt to commit suicide by jumping off a ship and his subsequent discharge from the Navy. Defendant also told the probation officer who conducted the presentence investigation that he suffered from post-traumatic stress disorder dating back to his enlistment.

But because this was a non-negotiated plea, the omission of any on-the-record discussion as to defendant's mental health requires reconsideration of the sentence so defendant has the opportunity to argue that his mental health history and present status warrant less than forty years. The court might find it supports mitigating factor four, which while not excusing the conduct or providing a

---

[4] Defendant included a competency report in the appendix. We cannot say with certainty the court or the prosecutor received it before the sentence hearing, as it was addressed solely to the Public Defender's Office.

defense, provides some explanation. N.J.S.A. 2C:44-1(b)(4). On the other hand, the judge may conclude that the mental health history does not warrant any reduction from the forty years first imposed. We leave that ultimate decision to the judge's discretion.

A court can consider any mitigating factors suggested by the evidence in the record and is not limited to the factors counsel brings to his or her attention. State v. Blackmon, 202 N.J. 283, 297 (2010). Defendant was entitled to hear from the court regarding his psychiatric history during the sentence hearing.

Affirmed as to the conviction; remanded for resentence.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13